UNITED STATES, Appellee

v

WILBUR EUGENE GANDY, Seaman, U. S. Navy, Appellant

9 USCMA 355, 26 CMR 135

## No. 10,346
### Decided June 13, 1958

*Commander David Bolton,* USN, argued the cause for Appellant, Accused.

*Major George M. Lilly,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles H. Beale, Jr.,* USMC.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was the operator in charge of the Clothing and Small Stores sales room aboard the U.S.S. TALLADEGA. On the morning of October 8, 1956, while the ship was at Long Beach, California, he became absent without authority when he failed to return to his ship at the expiration of liberty. The following day the Commander of the TALLADEGA appointed a three-man Board of Investigation "to inquire into the theft of approximately $800.00 from the Clothing Small Stores of the USS TALLADEGA (APA-208) on or about 6 October 1956." The appointing orders directed that the accused be notified of the proceedings and made a party to the investigation. The Board conducted its first hearing on October 18, 1956, at which time the accused was still in an absentee status. Subsequent sessions of the Board were conducted on October 19th, 22nd, 25th and 26th. On October 22, 1956, the accused terminated his unauthorized absence by surrendering himself to Naval authorities at Houston, Texas. He was subsequently returned to his ship.

On October 25, 1956, he appeared at the investigation in the company of one Ensign James T. Bonner, whom he had chosen to represent him as individual military counsel. The record of the proceedings that had transpired up to that point together with a copy of the appointing orders were read to him and he was explained his rights in the investigation. An opportunity to challenge any member of the board for cause was expressly declined. He also stated he "did not wish to recall any witnesses or cross-examine them on their previous testimony." Counsel for the investigation advised him of his rights concerning self-incrimination and the accused elected not to testify respecting the offenses of which he was suspected. The remaining witnesses were called by

**357**

the Board and examined in the accused's presence. The accused was given the opportunity to cross-examine these witnesses but he elected not to do so. He also declined the invitation to call witnesses in his own behalf.

On October 30, 1956, the Board submitted its findings and recommendations to the Commanding Officer of the TALLADEGA. It recommended, among other things, that the accused be tried by general court-martial for unauthorized absence and the larceny of approximately $800.00, in violation of Articles 86 and 121, Uniform Code of Military Justice, 10 USC §§ 886 and 921, respectively. On the same day charges were preferred against the accused and he was informed of them. A statement signed by the accused and dated November 1, 1956, indicated he did not desire to comment on the Board's recommendations. The Commanding Officer of the TALLADEGA thereupon submitted the entire file of the investigation to the Commandant, 11th Naval District, for appropriate action. Some two weeks later the District Legal Officer submitted his pretrial advice, pursuant to Article 34 of the Code, supra, 10 USC § 834, in which he recommended that the charges be referred to a general court-martial. The recommendation was acted upon and the accused was tried by a general court-martial convened by the Commandant, 11th Naval District. He pleaded guilty to the offense of absence without leave but not guilty to the offense of larceny. The court-martial found him guilty as charged and the convening authority reduced the period of confinement but otherwise approved the sentence. A board of review in the office of The Judge Advocate General of the Navy affirmed the findings and sentence as approved.

I

The first issue presented is whether an investigation of the type conducted in the case at bar may validly be instituted for the usual pretrial investigation held pursuant to Article 32 of the Code, supra, 10 USC § 832. Subsection (a) of that Article provides that no charge shall be referred to a general court-martial for trial "until a thorough and impartial investigation of all the matters set forth therein has been made." The purpose of this pretrial investigation is to ascertain the truth of the matters contained in the charges together with the disposition which should be made "in the interest of justice and discipline." The next subsection of the Article guarantees to an accused certain rights and privileges, among which are that he "shall be advised of the charges against him"; that he shall be represented at such investigation by counsel of his own selection if such counsel is reasonably available; that he shall be afforded "full opportunity" to cross-examine witnesses against him and to present evidence in his own behalf, either in defense or mitigation. Subsection (c) of the Article contains the provision that if an investigation has been conducted prior to the time the accused is charged with the offenses and if during such investigation he was present and given the opportunity to cross-examine and present evidence in his own behalf, pursuant to subsection (b), supra, "no further investigation of that charge is necessary under this article unless it is demanded by the accused after he is informed of the charge."

The Government contends that the investigation conducted in the case at bar prior to the preferral of charges satisfies the requirements of Article 32(c) when an accused has been afforded the same rights provided by Article 32 (b) and does not demand further investigation. We believe the Government's contention is sound. The very problem we now deal with was anticipated by the Congressional committees which considered enactment of the Uniform Code of Military Justice. In both the House and Senate Hearings, there is found the following commentary with respect to Article 32:

". . . Subdivision (c) is added to provide for a case where a *court of inquiry or other investigation* has been held wherein the accused was afforded the rights required by subdivision (b)." [Emphasis supplied.] [Hearings before House Armed Serv-

ices Committee on H.R. 2498, 81st Congress, 1st Session, page 994; Senate Report No. 486, 81st Congress, 1st Session, page 16.]

It is apparent, therefore, Congress contemplated that the type of investigation employed in this case would substantially comply with the requirements of Article 32. The investigation conducted by the Board accorded the accused every right and privilege required by subsection (b) of the Article. If anything, the investigation which was conducted by three officers over a period of five days, was more extensive in scope and operation than the type generally offered under Article 32. Although the accused was not present during the early stages of the investigation—due to his own misconduct in absenting himself without authority—he was, upon his return, read the proceedings which had transpired and given the opportunity to recall any witnesses who had testified. Thus in effect a new investigation was conducted subsequent to his return and in his presence. Furthermore, after the Board had submitted its findings and recommendations, the accused was given an additional opportunity to submit his comments which he declined to do. In addition to these procedural safeguards, the Commanding Officer of the TALLADEGA transferred the file of investigation to the Commandant, 11th Naval District, "for appropriate action." When the file reached this latter office it was submitted to the District Legal Officer for further consideration and advice in accordance with Article 34. We have carefully considered the pretrial procedure in this case and are convinced the accused has no standing to complain.

## II

The next issue for consideration is whether the accused was prejudiced by the convening authority's failure to appoint legally qualified counsel to represent him at the pretrial investigation. In United States v Tomaszewski, 8 USCMA 266, 24 CMR 76, we held that an accused is entitled to be represented at the Article 32 investigation by a defense counsel who is qualified within the meaning of Article 27(b) of the Code, supra, 10 USC § 827.[1] See also United States v Gunnels, 8 USCMA 130, 23 CMR 354, and United States v Nichols, 8 USCMA 119, 23 CMR 343. This right, however, may be waived. United States v Tomaszewski, supra. Here, the accused was represented at the pretrial investigation by Ensign Bonner, a nonlawyer. Our problem is further complicated by the fact that Bonner testified at the investigation prior to the accused's appearance. His testimony related to other alleged acts of misconduct for which the accused was not brought to trial. When the accused subsequently appeared at the investigation, he introduced Ensign Bonner as his "individual military counsel." The investigating officer's report, which accompanied the Board of Investigation proceedings, listed Ensign Bonner as the accused's requested counsel.

The accused, who voiced no objection to Bonner's representation either at the pretrial hearings or at trial, now contends that the failure to provide him with legally qualified counsel was prejudicial. The flaw in this argument, of course, is that the accused selected an officer of his own choosing to represent him at the investigation. To hold now that the failure to assign him legally qualified counsel constituted prejudicial error would cause us first to speculate, and second to assume that had the accused

---

[1] "Art. 27. Detail of trial counsel and defense counsel

 • • • • •

"(b) Trial counsel or defense counsel detailed for a general court-martial—

"(1) must be a judge advocate of the Army or the Air Force, or a law specialist of the Navy or Coast Guard, who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and

"(2) must be certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member."

not made his own selection, the convening authority would not have appointed qualified counsel to represent him. We cannot speculate error where none in fact exists.

It is next urged that Bonner was disqualified from acting as pretrial defense counsel by reason of ▉▉▉▉▉ the fact that he had been called as a witness and had testified before the Board of Investigation. None of the alleged acts of misconduct testified to by Bonner related in any manner to the offenses prosecuted at trial. The testimony of Bonner was given while the accused was in the status of an unauthorized absentee. Upon his subsequent appearance before the Board, the first order of business was to read the record of the proceedings which had occurred up to that point. Consequently, it is manifest the accused not only knew of Bonner's prior participation as a witness but acquiesced in it. His failure to raise an objection to Bonner's participation as defense counsel on the grounds he was disqualified from so acting or to request assignment of other counsel is clearly indicative of a conscious waiver on his part. Cf. United States v Hurt, 8 USCMA 224, 24 CMR 34; United States v Beer, 6 USCMA 180, 19 CMR 306.

### III

The next issue raised requires a brief statement of facts to place it in its proper perspective. When brought to trial for the offenses of larceny and absence without leave, in violation of Articles 121 and 86 of the Code, supra, respectively, the accused was represented by legally qualified appointed defense counsel. Upon arraignment, a plea of guilty was entered to all charges and specifications and findings of guilty were subsequently returned by the court. Testifying under oath in mitigation, the accused claimed he had been drinking heavily at the time the alleged larceny was committed. Although he wasn't "real drunk" at the time the theft was committed, he "didn't have any sense of reasoning." The law officer, exercising commendable caution, considered this testimony inconsistent with his plea with respect to the larceny offense

360

and entered on his behalf a plea of not guilty. Defense counsel stated for the record that the "element of surprise" had entered into the picture and he had therefore been "caught unaware." The case was then continued for five days with the understanding that additional continuances would be granted if necessary.

When the court reconvened, the prosecution presented evidence of the theft including a pretrial statement wherein the accused admitted guilt. The defense relied principally on the testimony of the accused that at the time the larceny was committed he was unable to remember anything he had done. In addition, the defense called two shipmates of the accused who testified concerning his "drinking habits." One witness had heard the accused was a "pretty heavy drinker" and the other stated he and the accused "got pretty drunk together on many occasions" and frequently, as a result of such drinking, the accused "would not have any memory as to what had transpired."

In rebuttal, the prosecution called as a witness, Ensign Bonner, who had been officer of the deck on the date in question. Before permitting him to testify, defense counsel requested permission to ask the witness "a few questions on voir dire to establish whether or not his testimony can be admissible." A side bar conference was requested by trial counsel. Defense counsel argued that an attorney-client privilege existed between Bonner and the accused and the former had not been released from the privilege. Trial counsel, however, argued that Bonner's testimony would only relate to matters which had occurred prior to the establishment of the attorney-client relationship. The law officer ruled Bonner's testimony was admissible, but cautioned trial counsel against inquiring into "any confidential communications that existed, or that took place after the attorney-client relationship came into being, or as it was forming." Defense counsel withdrew his request to examine the witness on voir dire. Bonner then equivocally testified that as officer of the deck he had seen the accused on the date in question and he "appeared sober" but "might

have been drinking." He also testified that the accused appeared unshaven, but he talked coherently and his walk was steady. On cross-examination, he was asked whether the accused could have been on "a good wing-ding" at the time and he replied that it was entirely possible. Another witness was called who offered the opinion that the accused was sober at the time.

The issue presented is whether it was prejudicial error to permit Bonner, who had acted as pretrial defense counsel, to testify for the prosecution at trial. Two crucial points are virtually conceded by the parties. The first is that Bonner's testimony concerned matters arising prior to the formation of the attorney-client privilege. The second is that his testimony related to a material issue in the case.

The Government argues the accused has no standing to claim prejudice because Bonner's representation had ceased at the time he testified and, furthermore, defense counsel had withdrawn his objection after assuring himself the testimony would only relate to matters which arose before the relationship was formed. The defense contends that for reasons of public policy a former attorney should not be permitted to testify against an accused in the same or related criminal proceedings. The matter testified to by Bonner occurred on October 6, 1956, and the attorney-client relationship was not established until some nineteen days later.[2]

It is universally recognized that lawyers representing litigants should not be called as witnesses in trials involving those litigants if such testimony "can be avoided consonant with the end of obtaining justice." United States v Alu, 246 F 2d 29 (CA 2d Cir) (1957). This does not mean, however, that one who formerly represented one of the parties to the litigation is thereafter disqualified as a witness. He may, the same as any other witness, testify to any competent facts *except* those which came to his knowledge by means of a confidential relationship with his client. Steiner v United States, 134 F 2d 931 (CA 5th Cir) (1943). Accord: Christensen v United States, 90 F 2d 152 (CA 7th Cir) (1937). Professor Wharton, in his work on Criminal Evidence, states the rule as follows:

"§ 809. Information acquired outside the professional relation.

"Information belonging to the ordinary, as distinguished from the professional, relation, is not within the privilege. Thus, an attorney may be examined like any other witness concerning a fact that he knew before he was employed in his professional character, as when he was a party to a particular transaction, or as to any other collateral fact which he might have known without being engaged professionally.

"The privilege does not extend to knowledge possessed by the attorney which he obtained relative to matters as to which he had not been consulted professionally by his client, or to information that the attorney has received from other sources, although his client may have given him the same information." [Wharton, Criminal Evidence, 12th ed.]

The existence, however, of the attorney-client relationship is a question of fact to be inquired into by the court preliminary to the admission or rejection of the proffered testimony. Wigmore, Evidence, 3d ed, § 2322. All doubt concerning whether or not the matter testified to by the attorney was obtained during the existence of the relationship should be resolved in favor of the accused. Here Bonner's testimony was exclusively limited to matters which had come to his attention while serving as officer of the deck and before the accused was even suspected of having committed any offense. It was not contended below nor is it urged now that

---

[2] Although Bonner was not a lawyer in the sense of Article 27(b), we shall treat—for the purposes of this case—the relationship which existed between him and the accused as one of attorney and client and apply the law applicable to such situations.

Bonner's testimony included any matter which he derived during the existence of the relationship. Under these circumstances we conclude it was not error for the law officer to have permitted such testimony.

### IV

The final issue raised presents a question of first impression with this Court. After the accused had testified on direct examination, trial counsel sought to impeach his testimony by cross-examining him concerning inconsistent statements he had made prior to trial to an agent of the Office of Naval Intelligence.[3] A proper basis for such interrogation was laid by giving the date, place, persons involved and the circumstances surrounding the statements. Defense counsel objected to this line of questioning on the grounds that he had never been given a copy of this statement. The objection was overruled and trial counsel was permitted to question the witness concerning these prior statements.

---

[3] These statements were not part of the confession previously introduced by the prosecution in evidence.

Appellate defense counsel insists that the law officer erred in permitting trial counsel to examine the accused on the basis of prior inconsistent statements which had not been made available to the defense prior to trial. Heavily relied upon in support of this contention is the recent Supreme Court case of Jencks v United States, 353 US 657, 77 S Ct 1007, 1 L ed 2d 1103. The rule of the *Jencks* case is clearly inapplicable under the facts of the present case. Furthermore, there is no claim that defense counsel had requested inspection of the statements either before or during trial and had been refused. Cf. United States v Heinel, 9 USCMA 259, 26 CMR 39. Under such circumstances, we can perceive of no duty on the part of the Government to open its files to an accused without some prior request on his behalf. Paragraph 44*h*, Manual for Courts-Martial, United States, 1951.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.