UNITED STATES, Appellant

v

RAYMOND G. FRANCHIA, Sentenced Prisoner (formerly U. S. Army), and PEDRO N. SUBIA, Sentenced Prisoner (formerly U. S. Army), Appellees

13 USCMA 315, 32 CMR 315

316

*First Lieutenant Jerome Nelson* argued the cause for Appellant, United States. With him on the brief were *Major Francis M. Cooper* and *First Lieutenant Charles D. Reaves.*

*First Lieutenant Gary G. Keltner* argued the cause for Appellees, Accused. With him on the brief was *Colonel W. H. Blackmarr.*

## Opinion of the Court

QUINN, Chief Judge:

The accused pleaded guilty to larceny and housebreaking, in violation of Articles 121 and 130, respectively, Uniform Code of Military Justice, 10 USC §§ 921, 930. Although subject to confinement for ten years, each was sentenced to confinement at hard labor for one year. On review, a board of review concluded that during the sentence procedure, the law officer erred to the accused's prejudice by denying a defense motion to compel the Government to produce certain documents. It directed a rehearing on the sentence. Under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Acting The Judge Advocate General of the Army asked this Court to review the decision of the board of review on the following issue:

"WAS THE BOARD OF REVIEW CORRECT IN HOLDING THAT THE ACCUSED WERE PREJUDICED BY THE FAILURE OF THE GOVERNMENT TO FURNISH TO THE DEFENSE THE ACCUSEDS' [sic] CORRECTIONAL TREATMENT FILES?"

At the time of the present offenses, the accused were sentenced prisoners confined in the United States Disciplinary Barracks pursuant to affirmed sentences of Army general courts-martial. Assigned to a "Local Parolee Unit," they took advantage of the freedom accorded them to break into the Fort Leavenworth Hunt Lodge to steal alcoholic beverages belonging to the local open mess.

Prior to convening of the court-martial, defense counsel requested that the correctional treatment file of each accused be made available to him for study and possible use in evidence. At trial, he moved to bar imposition of sentence until the complete files were made available for his examination and probable tender in evidence.

According to the record, each file contained a "computation sheet to determine the release dates of Subia and Franchia. There is a preliminary interview sheet here; a form indicating they are authorized correspondence; a series of miscellaneous correspondence pertaining to each of them. This could affect their parole plan. It could, in effect, affect any indebtedness they might have or correspondence with their relatives or parents in the event there has been any. There is another section here containing the results of their work, or their work reports from their immediate overseers. There is a section containing documents regarding disciplinary action that has been taken against them since they have been in the Disciplinary Barracks. And lastly, copies of their discharges, court-martial orders, and the staff judge advocate's review. Briefly that is what the correctional treatment file contains."

Before trial, the Commandant, United States Disciplinary Barracks, had granted the defense request for production and examination of the files only to the extent of allowing access to the prisoners' "Work and Evaluation Reports . . . [and] such other portions of the file containing information, the release of which will not be contrary to applicable policies and regulations." (Appellate Exhibit E.) At the trial, the custodian of the files, Major Becicka,

appeared and testified to the Government's willingness to permit examination of the entire file contents except for the "Red Cross report, the FBI reports, and the classification summaries."

The Red Cross report is a social case history of each accused's civilian background and family environment which was obtained through confidential interviews. The reports of the Federal Bureau of Investigation apparently refer only to information concerning their past criminal records. The classification summary consists of a running "condensation or an interpretation by . . . correctional treatment personnel of all the data that is contained in this folder. It explains the results of the work reports, the adjustment that these two men have made to the confinement setting." It includes "opinions of the people who work with these two individuals. There is a psychiatric report here; comments by the Chaplain, the Director of Custody; likewise, there are the results of our clemency and institutional boards, along with the Commandant's concurrence or his recommendations concerning what they have concluded would be the best program for these two men."

A model classification summary is attached to the record as an appellate exhibit. Purporting to relate to Prisoner John Doe, it summarizes both the official and the prisoner's version of the incident causing his penal servitude. It relates his previous history of military and civil offenses and sets out the prisoner's personal history. Based on these factors, and the results of a neuropsychiatric examination, a medical examination, studies of the prisoner's inclination, his reaction to custodial treatment, and his educational background, decisions are made by a classification board and recorded on the form as to the prisoner's initial assignment to prison employment, to a possible special program, and on the type of custody to which he should be subjected. Subsequent opinions and board recommendations concerning restoration, parole, clemency, and transfer to other penal institutions are also inserted in the summary. The document's closing entry indicates the prisoner's final disposition.

No objection was interposed by the Government to the disclosure of the recommendations of the classification boards contained in the summaries. The names of two psychiatrists and a chaplain who had contributed information used in the reports were made known to defense counsel. In addition, it was indicated that copies of the psychiatric reports might be obtained from the psychiatrists' office, if the examining psychiatrists authorized such action.

Neither of the files sought by defense counsel had been made available to the trial counsel.

The Commandant's refusal to divulge the Red Cross report, the Federal Bureau of Investigation reports, and the classification summary was based upon authority granted him by a letter from the Secretary of the Army directing that such information be marked "For Official Use Only" because the contributing sources expected their cooperation with the Department of the Army to be so protected. If the information was made available to "any individual who is engaged in prosecuting or reviewing any court-martial charges against the prisoner," the Commandant was required to "furnish such information to the prisoner or to his attorney." If the Commandant decided to deny access to the information, he was directed to notify the Secretary of the Army through The Judge Advocate General. In addition, divulgence of information obtained by the American Red Cross for use in connection with trials by court-martial is limited by paragraph 15, Army Regulations 940-10.

On the initial argument of the defense motion, the law officer concluded that action by the Secretary of the Army was required. Accordingly, he continued the case until the Commandant's ruling was forwarded to the Secretary and acted upon by him in appropriate form. Several days later, the court-martial reconvened. It was then shown that the Secretary, acting through his General Counsel, sustained the Commandant's ruling that the reports and summaries be withheld.

Thereupon, the law officer twice gave the defense counsel an opportunity to interview the witnesses whose identities had been disclosed to him or consult other sources for information relevant to the purpose for which the documents were sought. The opportunities were declined. The law officer thereupon overruled the motion to bar the Government from submitting the case to the court-martial for sentence.

In mitigation and extenuation, defense counsel introduced in evidence the work and evaluation reports prepared by accused's supervisors, called some of these individuals as witnesses, and produced each accused to testify in his own behalf. In addition, he made an extensive argument on their behalf. As noted above, the court sentenced each to confinement at hard labor for one year.

We begin by disposing of a few preliminary matters. First, the accused contend that the board of review must be upheld because the record fails to show the Secretary of the Army claimed any privilege on the part of the United States. This claim is contradicted by the record. The General Counsel, Department of the Army, acting for and on behalf of the Secretary, expressly directed that the file not be produced. Compare Boske v Comingore, 177 US 459, 44 L ed 846, 20 S Ct 701 (1900); United States v Ragen, 340 US 462, 95 L ed 417, 71 S Ct 416 (1951).[1] Next, the accused contends that in any event a rehearing is proper because the law officer did not, as he was requested to do by defense counsel, personally examine the withheld documents. This contention must also be rejected, for the record does not show such a request. On the contrary, it appears all parties assumed there was no need for such scrutiny since a ruling could safely be made on the basis of Major Becicka's description of the files' contents and the "John Doe" classification summary which defense counsel himself produced and represented as a "fair description" of the papers he desired to be made available. True, after the law officer's ruling, defense counsel requested the papers be attached to the record as appellate exhibits, but we perceive no abuse of discretion in the rejection of that request. The trial ruling had already been made, and inclusion of the files would have been tantamount to public disclosure. Cf. United States v Reynolds, 345 US 1, 97 L ed 727, 73 S Ct 528 (1953). Attachment as appellate exhibits was requested by the defense to aid the appellate review. The board apparently had no difficulty in disposing of the issue upon the record of trial, and we also are able to discern specifically the nature of the evidence which the accused sought. We put to one side, therefore, any further consideration of this aspect of the assignment of error.

To bring out the problem before us in sharper focus, it is appropriate to point out some matters with which we are not dealing. We are not dealing with the accused's right to impeach a witness who actually testifies against him by means of a previous statement made by him which is at the time in the hands of the prosecution. Jencks v United States, 353 US 657, 1 L ed 2d 1103, 77 S Ct 1007 (1957); United States v Heinel, 9 USCMA 259, 26 CMR 39. We are not dealing with discovery and inspection of original documents and statements which are inherently admissible in evidence on the merits, but with data which can properly be described as hearsay twice removed, in that they are unsworn reports by persons of what others said or did in regard to the accused. Also, we are not dealing with particularized items of evidence affirmatively shown to bear directly upon the merits of the issue, but with material assembled as part of the prison files of sentenced prisoners in

[1] Our conclusion here pertains only to whether the prescribed administrative procedures were followed. We express no opinion on the effect of any claim of privilege on the accused's right to prepare his defense in a court-martial. See United States v Hawkins, 6 USCMA 135, 19 CMR 261; Oldham, "Privileged Communications in Military Law," Military Law Review, July 1959 (Department of the Army Pamphlet 27–100–5) pages 17, 58–65.

confinement who have pleaded guilty to and stand convicted of offenses which subject them to additional confinement of ten years. Cf. Lanza v New York, 370 US 139, 8 L ed 2d 384, 82 S Ct 1218 (1962). With the point of inquiry thus narrowed, we move to examination of the correctness of the law officer's ruling directing continuation of the trial without the documents withheld from the accused by the prison officials.

Military law provides a much more direct and generally broader means of discovery by an accused █ than is normally available █ to him in civilian criminal █ prosecution. Cf. Rule 6 (e), Federal Rules of Criminal Procedure; Pittsburgh Plate Glass Company v United States, 360 US 395, 3 L ed 2d 1323, 79 S Ct 1237 (1959), with Article 32, Uniform Code of Military Justice, 10 USC § 832, Manual for Courts-Martial, United States, 1951, paragraphs 34 *d, e.* See also Comments, "Pre-Trial Disclosure in Criminal Cases," 60 Yale Law Journal 626, 628 (1951). In the ordinary general court-martial case, all relevant evidence against the accused in the hands of the Government is made directly available to the accused in the Article 32 investigation. See United States v Cunningham, 12 USCMA 402, 30 CMR 402. He can also call witnesses in his own behalf, and request the investigating officer to obtain other evidence which may be relevant to the issues. At the trial itself, the accused's right to subpoena witnesses and the motion for appropriate relief give him practically unlimited means for the production of evidence favorable to him. But the availability of the machinery for extensive discovery and production of evidence does not entitle the accused to use the machinery for improper purposes. If discovery of documentary evidence is sought, it must appear that the documents are relevant to the subject matter of the inquiry and that the request is reasonable. See Rules 16, 17(c), Federal Rules of Criminal Procedure, and Rule 34, Federal Rules of Civil Procedure. Monroe v United States, 234 F2d 49 (CA DC Cir) (1956). Relevance and reasonableness of request necessarily depend upon the facts of each case, especially in considering the impact of the trial court's ruling upon the rights of the accused. Cf. United States v French, 10 USCMA 171, 181, 27 CMR 245.

We assume, without deciding, that the reports sought by the accused were relevant to the sentence is- █ sue, and since the strict █ rules of evidence may be relaxed during the sentence procedure, they may have been admissible. Manual for Courts-Martial, United States, 1951, paragraphs 75*c*, 146*b*. However, the extent to which the rules are relaxed rests in the sound discretion of the law officer. Here, the principal information had been obtained from sources immediately and directly available to the accused. This circumstance obviously impressed the law officer in regard to the reasonableness of the defense request for production of the reports. As we noted earlier, he twice offered defense counsel the opportunity to interview the witnesses directly and consult the other available sources. The defense rejected the offers and refused to accept a continuance for that purpose. Yet, fundamentally the responsibility for presenting new evidence of mitigation and extenuation rests upon the accused. Placed in proper perspective, therefore, the accused and their counsel were attempting to have the prison authorities discharge the responsibility for them; that is, they were seeking to use the work product of the confinement officials as a substitute for their own efforts to assemble and select relevant admissible evidence in mitigation.

At trial, defense counsel admitted he did not know "where this [examination of the files] would lead us to." The admission strongly indicates the defense was engaged in an impermissible general "fishing expedition." See Bowman Dairy Co. v United States, 341 US 214, 221, 95 L ed 879, 71 S Ct 675 (1951). But even if it does not go that far, the absence of particularity of need bears directly upon the reasonableness of the defense's demand for discovery notwithstanding the immediate availability of the sources of the desired information and the law officer's

offer of a continuance. The accused were sentenced prisoners in a confinement facility. Subia had previously been convicted of five specifications of robbery, offenses which involve violence to the person of another. United States v Subia, 12 USCMA 23, 30 CMR 23. Safe custody of such persons is a sensitive task. Whatever sentence the court-martial imposed in the present proceedings, the accused would have remained in confinement. The law officer could reasonably have considered the possible harmful consequences of indiscriminate disclosure of adverse statements about the accused by other prisoners and by prison personnel which were initially made in confidence. And, he might reasonably conclude that since the purpose of the discovery motion was to obtain helpful evidence, it would be better to have the accused apply directly to the sources he believed might provide him with beneficial evidence. Under the circumstances of this case, the law officer did not abuse his discretion by refusing to stay the sentence proceedings until the documents demanded by the defense were produced for its examination.

We answer the certified question by saying that the law officer did not abuse his discretion in denying the defense motion to compel production of the documents in issue. Accordingly, the decision of the board of review is reversed and the record of trial is returned for further consideration of sentence.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in the result):

I am unable to agree that considerations of reasonableness and protection of the confidentiality of the Government's sources of evidence justify its claim of privilege against an accused's right to discovery. Such considerations have been clearly rejected by the Supreme Court. Jencks v United States, 353 US 657, 1 L ed 2d 1103, 77 S Ct 1007 (1957); United States v Andol-

schek, 142 F2d 503 (CA 2d Cir) (1944). Accordingly, they should not bear on the decision of the certified issue. United States v Heinel, 9 USCMA 259, 26 CMR 39.

Nevertheless, I join in reversing the decision of the board of review. The information which defense sought consisted of a Red Cross report, a "classification summary," and a Federal Bureau of Investigation report, the latter apparently listing only the prior criminal record of each accused. The report and the summary both consisted of entries by social and classification workers of opinions and "facts" reported to them by others. It was thus, as the Chief Judge notes, at least hearsay twice removed. While the rules of evidence are considerably relaxed after findings have been announced, they are not abolished, and I think it well within the discretion of a law officer to refuse to require such recitations—so far distant from the original declarant's testimony—to be produced and to leave the accused to consult the more original sources made known to him in this record. In this connection, it clearly appears that the defendants were made aware of the identity of the psychiatrists involved and knew that the original factual data had been gathered from friends and relatives known to them. Yet, no effort was made, despite a granted continuance and further offers by the law officer of additional time, to consult any witness or other source or otherwise to obtain more material evidence regarding the accused's background.

The immateriality of the "evidence" thus sought, in light of the revelation of its sources to counsel and the accused, leads inevitably to the conclusion that the law officer acted well within proper bounds in refusing to require discovery of the desired files. Accordingly, I join in answering the certified question in the negative and reversing the decision of the board of review.