**UNITED STATES, Appellee,**

v.

**Specialist Four Ulis ALFORD, Jr., SSN 425–02–0516, United States Army, Appellant.**

**CM 437641.**

U. S. Army Court of Military Review.

22 Aug. 1979.

Captain Maurice D. Healy, JAGC, argued the cause for the appellant. With him on the brief were Major Benjamin A. Sims, JAGC, Major Carlos A. Vallecillo, JAGC, Captain Allan T. Downen, JAGC, and Captain Courtney B. Wheeler, JAGC.

Captain Paul K. Cascio, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Robert D. Newberry, JAGC, and Captain Stephen P. Henderson, JAGC.

Before MITCHELL, DRIBBEN and WATKINS, Appellate Military Judges.

### OPINION OF THE COURT

PER CURIAM:

Appellant was convicted by a military judge, sitting as a general court-martial, of conspiracy to commit larceny and larceny of a stereo, in violation of Articles 81 and 121, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921. The adjudged sentence was a dishonorable discharge, confinement at hard labor for 18 months, forfeiture of all pay and allowances and reduction to Private E–1. The convening authority approved the sentence but suspended the discharge for one year.

Appellant's conviction was secured through the testimony of his accomplice, Private Davis who testified that appellant and he had planned to steal the stereo. Pursuant to the plan, Davis kept the charge of quarters (CQ) busy in the orderly room while appellant removed the stereo from another room in the barracks. When the taking was complete, the appellant signaled Davis. Davis went to his car and drove to an agreed upon point. Appellant and Davis then loaded the stereo into the car and took it to another soldier's apartment.

Appellant claims reversible error because he did not receive a copy of a criminal investigation report which indicated that two individuals, about whom he had no previous knowledge, were in the orderly room during the evening in question. The import of this information, in appellant's view, is he may have been able to use their testimony to contradict Private Davis' story that he was in the orderly room keeping the CQ busy while appellant was stealing the stereo. Appellant contends that a request that his defense counsel made to the Article 32, 10 U.S.C. § 832 investigating officer for "a copy of this report [the Article 32 officer's report] plus all relevant associated reports be made available for his use" operated as a request for a copy of the criminal investigator's report which contained the aforementioned information. He argues that failure to make the instant report available to him deprived him of due process and mandates a new trial, citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We begin by noting that an accused in the military is generally afforded a greater right to discovery than a defendant in a civilian court, as "[i]n the ordinary general court-martial case, all relevant evidence against the accused in the hands of the Government is made directly available to the accused in the Article 32 investigation. . . . He can also . . . request the investigating officer to obtain other evidence which may be relevant to the issues." *United States v. Franchia,* 13 U.S.C.M.A. 315, 320, 32 C.M.R. 315, 320 (1962); see paragraph 34d, MCM 1969 (Rev.). The Article 32 investigation is "an investigation for purposes of determining whether there is probable cause and it is an investigation to assist the accused." Hearings on HR 2498 Before the House Armed Services Comm., 81st Cong., 1st Sess. 999.

**518**

However, there is no general right to discovery in criminal cases. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Here, appellant's counsel made what can only be regarded as a general request for all relevant reports. There is nothing to indicate that the Article 32 officer believed the report in question to be of great importance to his inquiry. On the other hand, the investigating officer did supply appellant with the criminal investigation report completed in April 1978. This report focused on appellant and Davis as the perpetrators of the larceny. The original report, which contained the names of the two soldiers, aside from the CQ and CQ runner, who were in the orderly room at some time during the evening of the larceny, was completed in December of 1977. It focused on no one as the likely larcenist, thus the importance of who was in the orderly room was not manifest in that report. The Article 32 investigating officer did not question the other two persons named in the report, but he did question the CQ and CQ runner. The appellant was made aware of what they said, and he also had the opportunity to question them. Indeed, the appellant had the opportunity to call attention to the April report and specifically request it if he so desired. We note that the title heading of the report he received was "1st Supplemental." This should have alerted appellant of the existence of an earlier report. If he felt it to be potentially useful, he could have specifically requested it. *Franchia, supra.* He did not do so either prior to or at trial.

The concern of the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) was with the suppression by the Government of evidence favorable to the defense, rather than with the accused's right to discovery in a criminal case. *See United States v. Kaplan*, 554 F.2d 577 (3rd Cir. 1977). In this case, the evidence in question was not in itself favorable to the accused. The report did not indicate any relevant information beyond the names of the two soldiers who were in the orderly room on the evening of the incident. It did not indicate whether or not they had seen Private Davis there, and thus shed no light on the question of whether these potential witnesses would have bolstered the appellant's version of the facts. Therefore, it cannot be said that this is a case in which the Government was in possession of evidence favorable to the defendant which it sought to withhold, as in *Brady*. *See United States v. Friedman*, 593 F.2d 109, 120 (9th Cir. 1979) (the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense, *citing United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Neither is this a case in which the Government was in possession of evidence of such substantial value to the defense that "elementary fairness" would require its production for examination by the defense. *See United States v. Agurs, supra* at 110, 96 S.Ct. 2392. In reaching this conclusion, we · have considered the facts that, as mentioned above, the information in itself neither supported nor contradicted Davis' testimony; the defense could have specifically requested the report as they should have been alerted to its existence; and the defense knew about the CQ and CQ runner's presence in the day room and was ably situated to question them concerning the identity of other potential witnesses whose testimony might or might not have been supportive of its position at trial.

Appellant's remaining allegation of error does not merit discussion.

Accordingly, we find no due process violation. The evidence is sufficient to support appellant's conviction. The findings and sentence are affirmed.