UNITED STATES, Appellee,

v.

Curtis ROBERTS, Sergeant, U. S. Army, Appellant.

No. 38804.
CM 438379.

U. S. Court of Military Appeals.

March 23, 1981.

For Appellant: *Major Grifton E. Carden* (argued); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner* (on brief).

For Appellee: *Major Robert B. Williams* (argued); *Colonel R. R. Boller, Major Ted B. Borek* (on brief).

Opinion of the Court

FLETCHER, Judge:

The appellant was found guilty by members at his general court-martial of violating Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. In particular, he was convicted of aggravated assault upon his wife, Mrs. Brenda Roberts, by stabbing her with a knife and thereby intentionally inflicting grievous bodily harm upon her. He was sentenced to confinement at hard labor for one year and reduction to the lowest enlisted pay grade. The United States Army Court of Military Review affirmed this conviction and punishment.

The record of trial indicates that at about one o'clock in the morning of November 5, 1978, the appellant and his wife had a domestic quarrel in their apartment in Germany. Harsh words were exchanged, and the wife threw several household items which struck the appellant. Mrs. Roberts then left the apartment. The husband followed a short time thereafter. In the hallway below the apartment, the two spouses encountered each other and a physical struggle occurred. The Government, based on two admitted pretrial statements of the appellant, medical testimony and other evidence after the fact, asserted that he had intentionally stabbed his wife after seizing the knife from her. The defense, based upon the appellant's trial testimony, asserted that Mrs. Roberts was cut by accident or in self-defense by the appellant when he struggled to take a knife from her.

The appellant's wife did not testify at his court-martial in Germany. She gave an unsworn and unsigned statement to C.I.D. investigators shortly after the incident, but then on November 17, 1978, she left Germany on her own accord to return to the United States. She took up residence in Savannah, Georgia. Mrs. Roberts refused to voluntarily provide military authorities with a sworn statement or deposition concerning this matter. She also refused to voluntarily return to Germany at government expense for the court-martial against her husband.

The defense, prior to trial, and during trial, made repeated requests for the production of Mrs. Roberts to secure her *sworn* testimony concerning the incident. It originally alleged that she was a material witness as a matter of common sense because

she was the victim of the offense. Later on, defense counsel asserted that Mrs. Roberts could provide testimony which would support the appellant's self-defense theory. The military judge reviewed the unsworn and unsigned statement of Mrs. Roberts and denied the appellant's motions for the reason that he did not believe her testimony was material. We agree.

The first issue granted for review is: WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE REQUEST FOR THE ALLEGED VICTIM OF THE CRIME TO APPEAR AS A WITNESS.

At the outset, it must be noted that the defense counsel did not simply request that Mrs. Roberts be subpoenaed as a defense witness at the court-martial. Article 46, UCMJ, 10 U.S.C. § 846. He originally requested that the investigating officer at the Article 32 hearing call her as a witness. Article 32(b), UCMJ, 10 U.S.C. § 832(b). Later, he requested that the military judge at appellant's court-martial reopen the Article 32 investigation and subpoena Mrs. Roberts to appear before it.[1] Alternatively, he requested that the military judge provide the defense with a sworn statement from Mrs. Roberts concerning the incident. Still later the defense moved the court to order a deposition taken in Georgia from Mrs. Roberts. Article 49, UCMJ, 10 U.S.C. § 849. Finally, the defense requested that the

court-martial proceedings against the appellant be abated unless Mrs. Roberts was produced at trial. *See United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976).

I

■ We must first address the appellant's request to the investigating officer that Mrs. Roberts be produced as a witness at the Article 32 pretrial investigation. The record of this investigation reveals the following action of the investigating officer (IO) in denying this defense request:

Mrs. ROBERTS was not willing to testify or make a statement in any form concerning the incident. She had departed Germany on her own on or about 17 November 1978. Efforts were made by the IO to contact Mrs. ROBERTS in attempt to solicit her testimony. It was determined that Mrs. ROBERTS was not reasonably available as a witness, and that her testimony is not necessary for the proper conduct and conclusion of the formal investigation.

The pertinent issue before us is whether the investigating officer abused his discretion in not producing Mrs. Roberts for questioning as a witness at the pretrial investigation. *United States v. Ledbetter*, 2 M.J. 37, 43–44 (C.M.A.1976). *See generally Becker v. Webster*, 171 F.2d 762 (2d Cir. 1949), *cert. denied*, 336 U.S. 968, 69 S.Ct. 938, 93 L.Ed. 1120 (1949); *DeWar v. Hunter*, 170 F.2d 993

---

1. An interesting question is raised in this case concerning the authority of a military judge to reopen an Article 32 investigation and order a subpoena issued to a material witness requested by the defense. An even more intriguing question is whether an investigating officer may invoke the procedures in paragraph 115, Manual for Courts-Martial, United States, 1969 (Revised edition), to have a material witness subpoenaed to appear before him. *Cf. Legal and Legislative Basis, Manual for Courts-Martial*, United States, 1951, p. 98. Since 1923, military authorities have consistently held that there is no legal authority to compel a civilian witness to appear at a pretrial investigation, nor any funds to pay these witness fees. Dig. Ops. JAG (1912–1940) § 428(4) (Dec. 3, 1923); para. 35a, Manual for Courts-Martial, United States Army (1928); CM324930, Henry, 74 B.R. 13 (1947); ETO 25 *Kenney*, 1 B.R. (ETO) 13, 17–18 (1942); para. 35a, Manual for Courts-

Martial, United States Army (1949); para. 34d, Manual for Courts-Martial, United States, 1951; para. 34d, Manual for Courts-Martial, United States, 1969 (Revised edition). We note however, that in Federal civilian criminal practice a grand jury has subpoena power and a defendant at a preliminary examination before a magistrate, under Fed.R.Crim.P. 5.1(a), may request that material witnesses be subpoenaed on his behalf. *See Ross v. Sirica*, 380 F.2d 557 (D.C. Cir.1967); *Washington v. Clemmer*, 339 F.2d 725 (D.C.Cir.1964). *See generally* Fed.R. Crim.P. 17(b), and 8 Moore's Federal Practice, § 17.02 (2d ed. 1980). Due to our resolution of appellant's case with respect to subpoenas on grounds of materiality, we need not decide this question now. *See generally* Bruce, *The Pretrial Investigation: Some Practical Considerations*, 26 JAG Journal 225, 228–30 (Spring 1972); Murphy, *The Formal Pretrial Examination*, 12 Mil.L.Rev. 1, 27 n. 117 (1961).

(10th Cir. 1948), *cert. denied*, 337 U.S. 908, 69 S.Ct. 1048, 93 L.Ed. 1720 (1949).

The first factor to be considered is that the investigating officer set out the circumstances upon which his conclusion of unavailability was predicated. This is in accordance with our caveat stated in *United States v. Samuels*, 10 U.S.C.M.A. 206, 212, 27 C.M.R. 280, 286 (1959). Next, we note that his explanation indicates that not only did he attempt to secure Mrs. Roberts' testimony at this pretrial hearing but she in fact flatly refused to testify or make any statement. This is not a situation where her unavailability was assumed by the investigating officer without some affirmative action on his part. *See United States v. Chuculate*, 5 M.J. 143 (C.M.A.1978). Third, at this point in the pretrial investigation, we find no indication in the record that the defense desired as an alternative to her live testimony that this potential defense witness be deposed. *See United States v. Chuculate, supra.* Additionally, we note that at the time of the pretrial investigation, Mrs. Roberts, a civilian dependent, was in the United States far from the investigation's situs in Germany. *Cf. United States v. Ledbetter, supra.* Finally, and most importantly, it is clear that the investigating

officer decided, upon consideration of Mrs. Roberts' unsigned and unsworn pretrial statement,[2] that her testimony was not necessary to a thorough and impartial investigation of the charges. Article 32, *supra. See Index and Legislative History*, Uniform Code of Military Justice, Hearings Before a Subcommittee of the House Committee on Armed Services, 81st Cong., 1st Sess., on H.R. 2498, p. 998.

In view of the above circumstances, we are reluctant to rule that the investigating officer abused his discretion. There is no doubt that a military accused has important pretrial discovery rights at an Article 32 investigation. Nevertheless, such pretrial discovery is not the sole purpose of the investigation nor is it unrestricted in view of its statutory origin.[3]

## II

As indicated earlier, the defense made additional requests prior to his trial on the merits to discover the expected sworn testimony of Mrs. Roberts concerning the charged offense. The problem confronting military authorities was that Mrs. Roberts

2. Both counsel at trial conceded this statement was made by Mrs. Roberts. Defense counsel stated such a statement was made under medication. The military judge discounted this limited objection for purposes of deciding certain motions after considering the detailed nature of the statement. In view of the investigating officer's statement concerning Mrs. Roberts, no violation of our holding in *United States v. Samuels*, 10 U.S.C.M.A. 206, 27 C.M.R. 280 (1959), is perceived in this case.

3. Congress in enacting Article 32(b), Uniform Code of Military Justice, 10 U.S.C. § 832(b), provided (emphasis supplied):

At that investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf, either in defense or mitigation, and the investigating officer shall examine *available* witnesses requested by the accused.

This language is contained likewise in the statutory predecessors of Article 32(b). *See* Article of War 46(b) (1949), and Article of War 70 (1920). The legislative hearings on the latter statute indicates Congress was aware of an Army Regulation which provided similar rights

to an accused in the Army. *See* Hearings on S.64 Before a Subcommittee of the Senate Committee on Military Affairs, 66th Cong., 1st Sess., p. 512 (1919). That regulatory provision stated in part that:

The officer investigating the charges will afford the accused an opportunity to make any statement, call any witness... *When it is not practicable* to obtain personal testimony from any material witness, either for the prosecution or the defense, a written statement will be obtained, if possible, by the officer investigating the charges, of the testimony to be expected from such witness and submitted with the report of investigation. Para. 76, Manual for Courts-Martial, U.S. Army, 1917 (Change 5, July 14, 1919) (emphasis added). Nevertheless, the legislative hearings on Article 32 provide some indication that the use of a subpoena at the pretrial investigation was contemplated in extraordinary situations. *See* Index and Legislative History, Uniform Code of Military Justice, Hearings Before a Subcommittee of the House Committee on Armed Services, 81st Cong., 1st Sess., on H.R. 2498, pp. 996–998. *See also* n. 1, *supra.*

would not voluntarily[4] cooperate with them in providing this information under oath. The issue before us is whether the military judge improperly denied the requests of defense to compel her sworn testimony prior to trial in order to assist the preparation of his defense. *See United States v. Killebrew*, 9 M.J. 154, 163 (C.M.A.1980) (Cook, J., dissenting).[5]

After considering the appellant's motion for appropriate relief at an Article 39(a) session, the original military judge ordered the Government to secure from Mrs. Roberts a sworn statement concerning this incident. Mrs. Roberts again refused to voluntarily provide such a sworn statement. The military judge was then forced to address the original request of the defense that Mrs. Roberts be *compelled* to provide this pretrial information under oath. The alternative forms of relief[6] sought by the defense were all based on the military judge's ordering issuance of a subpoena to Mrs. Roberts.

**4.** Since 1863, Congress has provided for compulsory process in the military justice system. *See* Article 46, UCMJ, 10 U.S.C. § 846 (1951); Article of War 22 (1948); Article of War 22 (1920); Rev.Stat. § 1202 (1878); ch. 79, § 25, 12 Stat. 754 (1863). Two observations may be drawn from the development of the statutes. First, it was the intent of Congress that process in the military justice system be like the process available in civilian courts, *e.g.* federal courts. *See* Article 46, *supra*. Second, it was the intent of Congress that military authorities and later the President establish *the mechanics of procedure* for securing compulsory process.

**5.** An additional question which need not be resolved in the present case is whether paragraph 115, Manual, *supra*, would preclude several of the defense's requests for formal pretrial discovery. That Manual provision states in pertinent part (emphasis added):

A subpoena cannot be used for the purpose of compelling a witness to appear at an *examination before trial*, except for the taking of a deposition. See, however, Article 135 as to courts of inquiry.

The drafters of the Manual for Courts-Martial indicated that a similar provision in the 1951 Manual "provides that a subpoena cannot be used to compel a witness to appear at pretrial *investigation*. In this respect, *see* paragraph 34 d, Witnesses.'" *Legal and Legislative Basis, supra*, p. 98. *See* p. 54. *But see* nn. 1, 3 and 4, *supra*.

The original compulsory process statutes for the military justice system did not expressly provide for the payment of witness expenses by the United States. *See* ch. 79, § 25, 12 Stat. 754 (1863); Rev.Stat. § 1202 (1878). *See generally* Melnick, *The Defendant's Right to Obtain Evidence: An Examination of the Military Viewpoint*, 29 Mil.L.Rev. 1, 19–25 (July 1965). By means of the Army Annual Appropriations Act, Army Regulations provided such compensation with restrictions it deemed appropriate. *See* Dig.Ops. JAG (1865), Witnesses (8) p. 135; Army Regulations (1895), §§ 922, 962–965. *See generally* Melnick, *supra*, and Davis, *A Treatise on the Military Law of the United States*, 245–47, 721–22 (3rd ed., rev. 1913). At that time, the trial judge advocate who had subpoena power acted as both prosecutor and defense counsel, if requested. *See generally* Winthrop, Military Law, 251–78 (1886). He also prepared cases for court-martial and performed informally pretrial duties similar to the later statutorily created investigating officer. *See id.* at 225. The above Manual provision was originally designed to prevent the trial judge advocate from *summoning* witnesses to appear before him for preliminary examination. *See* Dig.Ops. JAG (1912) section IVB3a, p. 497. *See also* para. 160, Manual for Courts-Martial (Army) 1917; para. 160, Manual for Courts-Martial (Army) 1921. *Winthrop, Military Law and Precedents* (2d ed.) p. 188 n. 55 (1920 Reprint).

In 1928, particular reference to the trial judge advocate was eliminated from this Manual provision but otherwise it remained the same. *See* para. 97, Manual for Courts-Martial, U.S. Army, 1928. The Manual language has been preserved in substance in subsequent Manuals. *See* para. 105, Manual for Courts-Martial, U.S. Army, 1949; para. 115, Manual for Courts-Martial, United States, 1951; para. 115, Manual for Courts-Martial, United States, 1969 (Revised edition). In federal courts, the law is that a subpoena cannot be used by a prosecutor to compel a witness to appear at his office informally for a pretrial interview. *See In re Melvin*, 546 F.2d 1 (1st Cir. 1976); *United States v. Keen*, 509 F.2d 1273 (6th Cir. 1975); *United States v. Thomas*, 320 F.Supp. 527 (D.C.D.C. 1970).

In view of the origin of this Manual provision and comparable federal law, its broad application to the *formal* pretrial investigation is questionable.

**6.** Defense counsel moved that the judge reopen the Article 32 investigation and order Mrs. Roberts' appearance as a witness in Germany; he also requested that the court-martial be moved to the United States and an Article 39(a) session be convened to take her sworn testimony; finally he requested the court to order a subpoena issued to have her appear at a deposition in the United States.

■ A subpoena need not be ordered by a military judge to be issued to a potential witness unless the party seeking the subpoena has averred the witness' testimony will be material. *See United States v. Lucas*, 5 M.J. 167, 173 (C.M.A.1978). *See also* Fed.R.Crim.P. 17(b). Moreover, the military judge need not grant a request for the taking of a deposition where the testimony of the potential witness is not shown to be material. *See United States v. Murph*, 13 U.S.C.M.A. 629, 630, 33 C.M.R. 161, 162 (1963). The problem in the present case is that the defense contended it could not make such a showing of materiality because Mrs. Roberts refused to provide them a sworn statement as to her expected testimony. In the alternative, the defense argued that since Mrs. Roberts was the alleged victim of the offense, her testimony as a matter of common sense must be deemed material.

■ After considering the arguments of both counsel on this matter, the military judge denied the appellant's pretrial discovery motions. At the outset, he ruled that sufficient pretrial discovery had already been afforded the defense. The record indicates that the military judge was aware that *each counsel* individually had spoken to Mrs. Roberts over the telephone concerning the charged offenses and the favorability of her expected testimony to the defense. *Cf. United States v. Killebrew, supra.* Moreover, the military judge was aware that the defense as well as the Government had access to the unsworn and unsigned statement of Mrs. Roberts. *See United States v. Franchia*, 13 U.S.C.M.A. 315, 320, 32 C.M.R. 315, 320 (1962). Under these circumstances, we agree that the defense had sufficient pretrial information to bring its motions for further discovery before the military judge.

The next issue to be decided is whether the military judge abused his discretion in refusing to order the subpoena issued for further discovery because Mrs. Roberts was not a material witness for the defense. It is well established that "[a]t the trial itself, the accused's right to subpoena witnesses

and the motion for appropriate relief give him practically unlimited means for the production of evidence favorable to him." *United States v. Franchia, supra.*

■ This right, however, is limited to the extent that, as a condition precedent to the issuance of process, the testimony of any witness requested by the defense must be shown to be material and necessary. *See United States v. Harvey*, 8 U.S.C.M.A. 538, 543, 25 C.M.R. 42, 47 (1957); *United States v. DeAngelis*, 3 U.S.C.M.A. 298, 12 C.M.R. 54 (1953). More particularly, the defense must aver that the requested witness would offer testimony to negate the government's case or support the defense. *See United States v. Iturralde-Aponte*, 1 M.J. 196, 198 (C.M.A.1975).

■ Turning to the appellant's pretrial request for Mrs. Roberts' testimony, we note at the outset that she was the victim of the alleged offense. Obviously she would have relevant testimony to offer the court-martial concerning the government's case and the defense. Moreover, the Government chose not to call her as a witness despite the fact that, other than the appellant, she was the only eyewitness to the charged offense. Under normal circumstances, a possible inference might be drawn from her unexplained absence that her testimony would not support the Government or that it would be favorable to the accused. *Ross v. Sirica*, 380 F.2d 557, 559–60 (D.C.Cir.1967); *Washington v. Clemmer*, 339 F.2d 725 (D.C.Cir.1964). This inference cannot be drawn in the appellant's case because her absence as a government witness was not unexplained. From her unsworn and unsigned statement, the military judge knew that Mrs. Roberts did not wish to cooperate with military authorities in the court-martial of her husband. In addition, the Government averred that Mrs. Roberts' testimony, which was expected to support the government's case, was not necessary for its successful prosecution of the appellant. Finally, defense counsel himself subsequently revealed to the court that his communications with Mrs. Roberts led him to believe her testimony would be unfavora-

ble to the defense. Under these circumstances, the military judge did not abuse his discretion in refusing to issue a subpoena to compel the production of Mrs. Roberts for additional pretrial discovery. In any event, the military judge ruled that he would entertain a motion to depose Mrs. Roberts during the trial if justified by facts developed later in the case by either side.

### III

Thereafter in the court-martial, defense counsel requested the new military judge to produce [7] Mrs. Roberts at trial as a defense-requested witness or abate the proceedings. *See United States v. Carpenter, supra.* He recited to the military judge the circumstances surrounding his earlier requests for Mrs. Roberts' presence and the action taken by the original military judge then hearing the case. In addition, he informed the military judge that he had new information concerning the expected testimony of Mrs. Roberts. He informed the court that he now believed Mrs. Roberts' testimony would be different from what she originally told him over the phone and possibly it would be exculpatory. In particular, he averred that the appellant had subsequently spoken to his wife over the phone concerning family matters. Admitting he was not privy to the phone conversation, defense counsel stated that there was a "possible indication that she may have had the knife when she was downstairs in the hallway and of course this would go towards the defense that's going to be raised of self defense." The new military judge reviewed the unsworn and unsigned statement of Mrs. Roberts, heard argument from both counsel, and then denied the motion.[8]

The standard to review this denial of compulsory process by the military judge is again whether the defense requested witness' testimony would be material. *See United States v. Iturralde-Aponte, supra.* The Government pointed out that it would offer no evidence at trial that Mrs. Roberts did not originally have the knife in the hallway. Moreover, it noted that its own evidence, the two pretrial statements of the accused, established that it was Mrs. Roberts who originally had the knife in the hallway. The alleged change in story by Mrs. Roberts would also not impeach the government's case because it did not rely on her direct testimony at any time to prove its case. Finally, the prosecution's theory of the case rested on the appellant's pretrial statements that he struck his wife in rage after seizing the knife from her. In this light, the witness' expected testimony was not shown to negate the government's case. The defense nonetheless argued that possession of the knife by Mrs. Roberts in the hallway is material to their self-defense theory because the injuries may have occurred prior to her being disarmed. In this light, we must again consider the limited nature of the defense representations as to Mrs. Roberts' expected testimony. The defense did not aver that Mrs. Roberts would testify the stabbing occurred accidently during the struggle for the knife or by the appellant in self-defense. In fact, the defense made no averment that, contrary to his earlier representations, her expected testimony would now be favorable to the defense on these critical issues. Under all

---

**7.** An interesting issue arises in this case concerning the authority of a military judge to issue a subpoena to a witness in the United States to appear at a court-martial conducted in a foreign country. *See* Articles 46 and 47, UCMJ, 10 U.S.C. §§ 846, 847. We have held that a court-martial has no authority by statute to issue a subpoena to a witness in a foreign country to appear at a court-martial. *See United States v. Daniels*, 23 U.S.C.M.A. 94, 48 C.M.R. 655 (1974). That decision does not justify the conclusion of the Army Court of Military Review in *United States v. Boone*, 49 C.M.R. 709 (A.C.M.R.1975), that a court-mar-

tial also has no authority to subpoena a witness in the United States to appear at a court-martial in a foreign country. The Manual, *supra*, offers no assistance on this issue. Due to our resolution of the present case, we find it unnecessary to address this question at the present time. *See generally* Melnick, *supra*. *See also* Cooper, *The Sixth Amendment and Military Criminal Law: Constitutional Protection and Beyond*, 84 Mil.L.Rev. 41, 65 n. 164 (1979).

**8.** *See* n. 2.

the circumstances of this case, we are reluctant to overrule the trial judge's determination that Mrs. Roberts' expected testimony would not be material to the defense.

The second issue granted for review in this case is:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ADMITTING HEARSAY STATEMENTS OF THE VICTIM.

■ At trial, Sergeant First Class Michael, a neighbor of the appellant, was a witness for the Government. He testified that around 1 a. m. on November 5, 1978, he was awakened from sleep by banging on his apartment door and a woman's scream. He testified that through his door he heard an unidentified woman say, "Help someone, he's going to cut me," and an unidentified man say, "I'm tired of your shit." He further testified that he opened the door and saw Mrs. Roberts standing in front of his door with blood all over her neck. Michael brought Mrs. Roberts into the apartment and told his wife to help her. He then called an ambulance and the military police. He returned to his bathroom within five minutes and saw that Mrs. Roberts was in a condition of shock, very cold and clammy, scared and worried about her kids. Michael testified that he asked Mrs. Roberts who had done this to her, and that she had said, "My husband."

Defense counsel objected to the final part of Sergeant Michael's testimony concerning Mrs. Roberts out-of-court identification of the appellant as her assailant. He contended such testimony contained inadmissible hearsay which did not qualify for admission as a spontaneous exclamation because the statement was solicited from her some five minutes after the event. See para. 142b, Manual for Courts-Martial, United States, 1969 (Revised edition). The military judge denied this motion after a limited hearing on the question.

Under the facts of the present case, we find the time delay between the alleged assault and the hearsay statement of identification to be of minimum import. See

para. 142b, Manual, supra. It is quite obvious that Mrs. Roberts had lost a considerable amount of blood and was still in a state of shock as a result of her injuries. See United States v. Burge, 1 M.J. 408, 411 (C.M.A.1976). Moreover, under military law effective at the time of trial, the fact that the statement was made in response to questioning by an uninvolved bystander does not necessarily render it one of design or a product of calm deliberation. See para. 142b, Manual, supra. Cf. United States v. Mounts, 1 U.S.C.M.A. 114, 2 C.M.R. 20 (1952). A reasonable inference could easily be drawn in the present case that Mrs. Roberts' out-of-court statement was impulsive and an instinctive outcome of the event. See para. 142b, Manual, supra. In any event, there was no real dispute in this case as to the identity of Mrs. Roberts' assailant; rather the dispute went to the circumstances under which it occurred.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COOK, Judge (concurring in the result):

I disagree with, and have reservations about, a number of statements in the principal opinion. The one most simply stated is my disagreement with the declaration that the "unexplained absence" of the victim as a witness for the Government could raise an "inference ... that her testimony would not support the Government or that it would be favorable to the accused." 10 M.J. at 313. No basis exists for an adverse inference from failure to call a witness unless the party logically expected to call the witness "has it *peculiarly* within his power to produce" the witness. (Emphasis added.) *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); 2 Wigmore, Evidence §§ 286, 288 (3d ed) (1940). Absent any evidence of a special "power to produce," I would suppose that it would have to be concluded that the witness is "equally available" to the accused and the Government; equal availability "precludes the inference." *United States v.*

*White*, 17 U.S.C.M.A. 211, 214, 38 C.M.R. 9, 12 (1967).

Other reservations and disagreements concern the footnotes. Suffice it to note that I see no justification for the suggestion, in footnotes 1 and 3, that there is uncertainty in military law as to whether a subpoena may issue to compel a civilian witness to appear and testify at an Article 32 investigation. *See* my separate opinion in *United States v. Chuculate*, 5 M.J. 143, 146 (C.M.A.1978). Footnote 1 of the principal opinion refers to two articles on the subject in a way that strikes me as implying support for the subject that there is uncertainty in the law. I have read the articles. In *The Pretrial Investigation: Some Practical Considerations*, 26 JAG Journal 225, 228 (Spring 1972), Bruce says categorically, "[T]here is no provision for compelling the attendance of civilian witnesses." In his article, *The Formal Pretrial Investigation*, 12 Mil.L.Rev. 1 (1961), Lieutenant Colonel Murphy distinguishes between use of a subpoena to obtain the presence of a witness at an Article 32 investigation for personal testimony and use of a subpoena to procure testimony by deposition for consideration at an Article 32 investigation. Discussing a subpoena for personal appearance, he said:

> Since there is no legal authority to subpoena a civilian witness to appear and testify at the Article 32 investigation, the availability of a civilian witness must necessarily depend upon whether he will voluntarily appear and testify at the request of the investigating officer or the accused.

*Id.* at 24. As to subpoena of a civilian witness for a deposition to be used in an Article 32 investigation, he remarked on "the conflicting views of at least two authors of books on military law under the Code.[117]" The footnote reference is as follows:

> Everett, Military Justice in the Armed Forces of the United States 217 (1956). This authority expresses the belief that a civilian cannot "be subpoenaed in connection with a pretrial investigation of charges under Article 32 of the Uniform Code." He further states that it would appear that a civilian can be subpoenaed only after charges have been referred to a court-martial for trial. But see Feld, A Manual of Courts-Martial Practice and Appeal § 41 at 54–55 (1957). This author expresses the view that although a subpoena cannot be used to compel attendance at a pretrial examination except a court of inquiry, one can be used for the purposes of a deposition regarding charges not yet referred for trial if issued by the trial counsel of an existing court-martial at the direction of the convening authority.

*Id.* at 27. Later, in his text commentary, Colonel Murphy sets out his own view as to the state of the law on the use of a subpoena to obtain a deposition:

> It is the belief of this author, however, that although authority does not exist to subpoena a civilian witness to appear at the Article 32 investigation, there is statutory authority to subpoena such a witness for the purpose of taking his oral or written deposition.

*Id.* at 28.

I agree with my Brothers that the trial judge properly denied the various requests in respect to Mrs. Roberts, and, I, therefore, join them in affirming the decision of the Court of Military Review.