UNITED STATES, Appellee,

v.

Frank D. STRONG, Specialist Four, U.S. Army, Appellant.

No. 46,420.
CM 443262.

U.S. Court of Military Appeals.

March 12, 1984.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Major Robert M. Ott,* and *Captain Frank J. DiGiammarino* (on brief); *Captain Michael T. Kelly.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Daniel V. Velling,* and *Captain Paul E. Jordan* (on brief); *Captain Patrick M. Flachs, Captain John L. Plotkin.*

*Opinion of the Court*

COOK, Judge.

Tried by general court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of wrongfully possessing and selling lysergic acid diethylamide (LSD) on two occasions; and wrongfully possessing and selling marihuana,[1] in violation of Articles 92 and 134, Uniform Code of Mili-

1. The military judge found the three sets of possession and sale specifications to be multi- plicious for sentencing.

tary Justice, 10 U.S.C. §§ 892 and 934, respectively. The adjudged and approved sentence extends to a dishonorable discharge, confinement at hard labor for 15 months, forfeiture of $367.00 pay per month for 15 months, and reduction to private (E–1).[2] The United States Army Court of Military Review affirmed the findings and sentence in a memorandum opinion. This Court granted accused's petition for review on the following issue:

WHETHER THE MILITARY JUDGE IMPROPERLY PERMITTED CROSS–EXAMINATION OF APPELLANT CONCERNING THE EXISTENCE OF A RECORD OF NONJUDICIAL PUNISHMENT WHICH WAS NOT OTHERWISE PROPERLY ADMISSIBLE INTO EVIDENCE.

The evidence at trial established that on three separate occasions the accused sold substantial quantities of illicit drugs to a military police investigator who was acting in a covert status. When the accused was apprehended shortly thereafter, he was found in possession of an additional large quantity of LSD.

After findings, the defense presented various witnesses from the accused's chain of command and family who testified about his good duty performance, leadership abilities, military appearance, attitude, personal background, and family situation. The accused then took the stand and made a sworn statement in which he detailed his service in Germany during a prior enlistment and certain achievements made at that time. He also placed into evidence the facts that he had received the good conduct medal for the period from September 8, 1978, through September 7, 1981; an honorable discharge at the termination of the prior enlistment; and that he had reenlisted in March of 1982.

Prior to beginning his cross-examination, trial counsel informed the military judge:

Your honor, because the defense has asked the accused about his prior enlistment, that he received a prior honorable discharge, and because he has submitted the letters of commendation during his prior enlistment from his unit in Germany, and because I know the question will be objected to by defense counsel. We would like to ask the accused about his duty performance during the period of time that he was in Germany, he has indicated that he received an honorable discharge and received letters of commendation while he was there. With reference to that, we would ask him about whether or not he had ever received an Article 15.

The military judge responded:

Well, this is a judge alone case, just ask your question and I'll resolve the objection when it comes up. If it is sustained I'll disregard the question. You may just continue with your cross-examination. We will take the matter up when it arises.

Trial counsel then asked the accused:

Specialist Strong, during the period of time that you were stationed in Germany in ... June of '79, did you receive an Article 15 from a Colonel Boyd Jones for possession of marihuana?

As forecast, defense counsel objected and offered these grounds:

Your honor, the principal basis for our objection is that the prosecutor is far beyond the proper bounds of cross-examination at this point. By basing his cross-examination upon a document which he knows to be inadmissible, the appropriate military regulations would indicate that the prosecutor should not have had any knowledge of the Article 15 that he now attempts to cross-examine the accused upon. Had the Army done its job properly in taking that Article 15 out of the accused's file, it would not presently be before the court. Therefore the prosecutor is attempting to backdoor or get around the clear intent of the regulation, that is soldiers are not to be harmed in any way by a stale Article 15.

Trial counsel responded that Mil.R.Evid. 405 permits inquiry during cross-examination

2. The sentence adjudged was less than that set   out in the pretrial agreement.

into "relevant specific instances of conduct" and that "[t]he accused ha[d] opened the door" by presenting evidence of his honorable discharge and had "characterized his service as received letters of commendation."

After researching the issue, the military judge overruled the objection with these remarks:

I am of the view that the question of admissibility of a document is independent from the question of what may be covered on cross-examination of a witness. And, the accused has opened the door on his direct to this question, it's a proper question.

The accused answered that he did receive an Article 15 for possession of marihuana while he was stationed in Germany.

At the conclusion of the accused's testimony, defense counsel offered the Article 15 form and asked the trial counsel "to state whether he had a source of that information as anything other than the accused's 201 file." The military judge admitted the form as an appellate exhibit, declined to look at it, and ascertained that it provided the only source of information for trial counsel's question.

Aside from the military judge's question as to the date of the Article 15, there was no other reference to it during arguments

or otherwise, even though defense counsel's closing argument characterized accused's criminal behavior as "a sudden immature desire to be greedy for three days in June." [3]

Paragraph 75b(2), Manual for Courts-Martial, United States, 1969 (Revised edition) (ch. 5) provides:

Under regulations of the Secretary concerned, the trial counsel may obtain and introduce from the personnel records of the accused ... evidence of the character of prior service of the accused. Such evidence includes ... evidence of any disciplinary actions to include punishments under Article 15.

It is agreed by all concerned that paragraph 3–15c(3)(d) of Army Regulation 27–10 (C20, August 15, 1980), required that the record of the subject Article 15 should have been removed from the accused's local Military Personnel Records Jacket (MPRJ) and destroyed after the passage of two years from the date of its imposition. Consequently, this Article 15 was not maintained in the accused's local records in accordance with secretarial regulations and could not be introduced under this portion of paragraph 75. [4]

However, paragraph 75d, Manual, *supra* (ch. 5), provides:

Obviously, evidence of the accused's prior misconduct had very little effect on the military judge's sentence deliberations.

---

3. The accused testified on direct examination that he was engaged in the sale of drugs because he "could invest a little bit of money and get more back ... I wanted the money." In spite of this testimony, the military judge, prior to announcing sentence, told the accused:

[T]his is a difficult case to decide, you are obviously a pillar of your community both military and civilian. How a person like you got into this mess in the first place frankly is a matter that I still don't understand; and I don't think you do either, but you did. I have taken into account all the evidence that you presented. In fact I have considered that evidence and you should consider that the sentence I am going to impose is less severe than it would otherwise be because of your otherwise good military and civilian character.... But, if I were to reduce the sentence any less than I have already, that is I have taken some off, but if I drop it down any more, it would take away from the seriousness of these offenses.

4. AR 27–10 (C20, August 15, 1980), provides for the original Article 15 correspondence to be filed in the Official Military Personnel File (OMPF) for all active duty Army enlisted men who have completed three years or less of active military service when the offense is committed (except where only minor punishment is imposed, the commander will determine whether or not the form will be filed in the serviceman's Military Personnel Records Jacket (MPRJ) or OMPF). Paras. 3–15b and c(3)(a). However, subparagraph c(3)(d)3 provides that the original form or copy, as applicable, will be withdrawn from the MPRJ and destroyed at the expiration of two years. Thus, even though here the Article 15 was mistakenly retained in the MPRJ beyond the two-year period, it would still be retained in the OMPF. *See also* AR 640–10, Table 4–1, p. 4–13 (February 1, 1981).

The prosecution may present evidence to rebut evidence presented by the defense. The defense in surrebuttal may then rebut any rebuttal evidence offered by the prosecution.... The Military Rules of Evidence may be relaxed during rebuttal and surrebuttal to the same degree as in paragraph 75*c*(3).

There is a substantial difference between the sort of evidence which may be introduced by trial counsel under paragraph 75*b* and that which may be used as proper rebuttal under paragraph 75*d*.[5]

> The purpose of such rebuttal evidence is to explain, clarify, or contradict the opponent's evidence. *See United States v. Shaw,* 9 U.S.C.M.A. 267, 271, 26 C.M.R. 47, 51 (1958) (Ferguson, J., dissenting). Since the defense is given wide latitude in the nature of the evidence it is permitted to offer, ... some latitude must likewise be accorded to the Government or only a one-sided picture is presented to the sentencing authority.... Thus, paragraph 75*e* of the Manual is not subject to the same evidentiary limitation as paragraph 75*d* ...

*United States v. McGill,* 15 M.J. 242, 246 (C.M.A.1983) (Cook, J., concurring with reservations).[6]

We have long recognized the Government's right to present evidence to rebut evidence of the accused's good character offered in mitigation after findings. In *United States v. Blau,* 5 U.S.C.M.A. 232, 244, 17 C.M.R. 232, 244 (1954), we said:

> [W]e cannot believe that the framers of the Manual intended that the rule of exclusion regarding character testimony should be abandoned in favor of the accused, yet retained to hamper the prosecution—once the issue of guilt or inno-

cence has been determined.... [W]ere we to adopt a contrary view, an accused would occupy the unique position of being able to "parade a series of partisan witnesses before the court"—testifying at length concerning specific acts of exemplary conduct by him—without the slightest apprehension of contradiction or refutation by the opposition, full-handed with proof of a contrary import although the prosecution might be. In light of what has been said, we are sure that an accused was not marked to enjoy so substantial an advantage after conviction.

*See also United States v. Plante,* 13 U.S.C.M.A. 266, 32 C.M.R. 266 (1962). Although the accused controls this part of the trial proceedings, such control is not absolute—fairness does not permit this result.

■ The application of the rules of evidence at this time is within the discretion of the military judge, and the standard of review is whether he abused his discretion. *See United States v. Franchia,* 13 U.S.C.M.A. 315, 32 C.M.R. 315 (1962). The question of whether the accused "opened the door" was resolved adversely to the accused by the military judge. Hence, we must examine his ruling in this light.

■ There is no doubt that trial counsel's question would have been proper if the accused had testified that he had never been disciplined during his prior enlistment; however, defense counsel was astute enough to avoid such testimony. The whole tenor of the evidence introduced by the accused was that he had been an exemplary soldier during that time period.

The defense must accept responsibility not only for the specific evidence it offers in mitigation, but also for the reasonable

---

5. *See United States v. Cisneros,* 11 M.J. 48 (C.M.A.1981), where an Article 15 was sought to be introduced in aggravation even though the two-year period had expired after the beginning of trial, but before the accused had entered pleas. We held that the regulation (AR 27–10, para. 3–15*b*(3)(d) 3) required removal of the record from the accused's personnel file and it could not be considered by the sentencing authority. Of course, the situation there was different from the situation here.

6. Change 5 to paragraph 75, Manual for Courts-Martial, United States, 1969 (Revised edition), which applied in this case, re-lettered the subparagraphs involved in *United States v. McGill,* 15 M.J. 242 (C.M.A.1983); subparagraphs *d* and *e* became *b* and *d,* respectively, cited in the text.

inferences which must be drawn from it. There is no question that the evidence presented here by the defense could not help but convince the military judge that the accused had an outstanding military character. Consequently, it would be illogical for trial counsel, having contrary knowledge, to be forced to stand by powerless to correct this impression.

It was sheer happenstance that the Article 15 in question here was still in the accused's personnel records file in violation of Army regulations. However, the fact that it was does not compel the conclusion that it must be excluded for all purposes in this situation. *See United States v. Caceres,* 440 U.S. 741, 754–55, 99 S.Ct. 1465, 1472–73, 59 L.Ed.2d 733 (1979). Under the peculiar facts of this case, the question of how trial counsel discovered evidence of the accused's prior delict is not so important as the fact that he did discover it.[7] And to require that he sit quietly by while the accused creates an incomplete picture of the character of his prior service does not comport with the purpose of paragraph 75 to present a complete and accurate picture of the accused's conduct and performance. *United States v. Morgan,* 15 M.J. 128 (C.M.A.1983).

Our examination of the record and the evidence presented by the defense in mitigation convinces us that the military judge did not abuse his discretion when he permitted trial counsel to ask the accused about his prior documented misconduct, even though the document establishing that misconduct was incorrectly retained in his field personnel files.

The decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER concurs.

EVERETT, Chief Judge (dissenting):

Appellant received nonjudicial punishment for possession of marihuana while stationed in Germany in 1979. However, under applicable Army Regulations, the record of this punishment should have been removed from his military personnel records jacket after two years from the date of its imposition, so it was inadmissible in evidence at Strong's trial in 1982. *See United States v. Cisneros,* 11 M.J. 48 (C.M.A.1981).

Of course, the inadmissibility of the prior nonjudicial punishment can be used only as a shield and not as a sword; and a defendant may not mislead the court by manipulation of a rule of evidence. *See Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Thus, like the majority, I have "no doubt that trial counsel's question would have been proper if the accused had testified that he had never been disciplined during his prior enlistment." 17 M.J. 263, 266. Likewise, I believe that trial counsel could properly have asked appellant about the Article 15 received in 1979 if in some other way appellant had "opened the door."

However, my examination of appellant's testimony and his other evidence in extenuation and mitigation does not suggest that the defense afforded any occasion for trial counsel's question. Although Strong offered evidence that he had received an honorable discharge from his prior enlistment and had earned a good-conduct medal for service during the same period, this evidence does not constitute a representation that he had never received an Article 15 during that enlistment. Certainly, the Government has not contended that, because of his nonjudicial punishment, appellant should not have been honorably discharged or granted the good-conduct medal.

The military judge properly observed "that the question of admissibility of a document is independent from the question of what may be covered on cross-examination of a witness." However, this is not to say that an otherwise inadmissible document becomes admissible simply because a witness is cross-examined about its existence or contents. Thus, under the circumstances

---

7. Since the Article 15 would have remained filed in the accused's OMPF permanently, trial

counsel could have learned of it there.

of the present case, I would treat trial counsel's question about appellant's nonjudicial punishment in the same way that I would treat a government offer in evidence of the inadmissible record of that punishment.

My concern with the result reached by the majority is enhanced by my belief that it violates the reasonable expectations of appellant and other soldiers. The provision in the Army Regulation which requires removal of a record of nonjudicial punishment after two years from the date of the offense is designed to allow the recipient of an Article 15 to clear his record. The expungement of the record of nonjudicial punishment from his personnel records jacket protects the soldier from being subjected thereafter to the use of this record against him in disciplinary or court-martial proceedings—although it does not entitle him to claim falsely that he has never received nonjudicial punishment.

While the majority's rationale grants him protection against the use of the record in a court-martial proceeding so long as he does not take the stand or offer evidence in mitigation, if the accused does offer such evidence, the otherwise inadmissible document becomes a proper subject of cross-examination. Thus, the soldier receives much less protection than he might have expected at the time he accepted nonjudicial punishment—even though that expectation may have been one of the very reasons why he did not object to imposition of the nonjudicial punishment.

Furthermore, I can find no reason in logic why—if the majority's conclusion that the evidence could be introduced here by cross-examination of appellant is correct—it could not equally well be introduced by cross-examination of some other witness or by the presentation of extrinsic evidence. The broad latitude allowed for cross-examination is for purposes of testing credibility, and appellant's receipt of an Article 15 does not impugn his credibility. Thus, under the circumstances of this case, the judge's allowance of trial counsel's question flew in the face of *United States v. Cisneros, supra.*

Accordingly, I dissent.