**UNITED STATES, Appellee,**

v.

**Master Sergeant Mitchell W. HENSON, 424–60–5757, United States Army, Appellant.**

**CM 444782.**

U.S. Army Court of Military Review.

29 April 1985.

Colonel William G. Eckhardt, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC, and Captain Guy J. Ferrante, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Joseph A. Rehyansky, JAGC, and Captain Karen A. Charbonneau, JAGC, were on the pleadings for appellee.

Before MARDEN, PAULEY, and WERNER Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge.

Pursuant to the provisions of Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869, The Judge Advocate General has referred this case to us for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. In consonance with his

pleas, the appellant was convicted of eighteen specifications of violating a lawful general regulation [1] in violation of Article 92, UCMJ, 10 U.S.C. § 892. Specifically, the appellant, a first sergeant, admitted to misusing his grade by operating an automobile sales business during regular duty hours while employing Army personnel, property and facilities subject to his control and supervision. A court-martial composed of members sentenced him to be reduced to the grade of E–6 and to forfeit $200.00 per month for twelve months. After disapproving one of the findings of guilty, the convening authority approved the remainder, the two grade reduction and only nine months of the forfeitures.

There are two issues in this case: whether the military judge's failure to suppress the testimony of an Army judge advocate concerning certain telephonic discussions between the appellant and that officer violated appellant's attorney-client privilege; and, if so, whether the evidence contained in that testimony was prejudicial to appellant. We hold that appellant's attorney-client privilege was violated and that appellant suffered prejudice as a result.

During the summer of 1982, the appellant began selling used automobiles to military personnel for personal profit. Using his contacts within the surrounding military and civilian communities, he obtained used automobiles he intended to sell from local automobile rental companies and arranged financing for prospective purchasers from the Schofield Barracks Credit Union. Additionally, he employed military personnel subject to his military supervision in the operation of the business.

In mid-September 1982, appellant telephoned a judge advocate, Captain (CPT) B, who was assigned to the Administrative Law Division of the Office of the Division Staff Judge Advocate and inquired about the legality of his business. Under AR 600–50, each Army agency, command or installation must designate a "Deputy Standards of Conduct Counselor" whose responsibilities include the rendition of "[a]dvice and assistance to the entity concerned and personnel thereof." AR 600–50, para. 2–9 (20 Oct. 1977). However, there was no evidence to indicate that CPT B was such a standards of conduct counselor. To the contrary, in a sworn statement admitted first at the Article 32, UCMJ, investigation and then at trial, CPT B stated he was not familiar with the contents of the standards of conduct regulation. In response to appellant's inquiry, CPT B was compelled to research the question. Thereafter he called appellant, told him that his business venture was proscribed by the regulation, and advised him to cease conducting it. Apparently, appellant did not immediately comply with CPT B's advice since at least six of the offenses of which he was convicted occurred after his conversation with that officer. Over defense objection, CPT B testified in aggravation to his conversations with appellant. Subsequently, appellant testified in extenuation and mitigation that CPT B did not advise him to completely terminate his business activity; but rather that CPT B merely advised appellant not to pursue his business during duty hours or to sell automobiles to subordinates. In his argument on sentencing, trial counsel, relying heavily on CPT B's testimony, argued that appellant's activities were not as innocent as appellant would have them appear.

The Supreme Court of the United States has held that the purpose of the attorney-client privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Consistent with this policy, Military Rule of Evidence (M.R.E.) 502(a) pro-

1. Army Regulation 600–50, Standards of Conduct for Department of Army Personnel [hereinafter cited as AR 600–50], para. 2–1b., d., and j. and para. 5–2a(2) and (4) (20 Oct. 1977) (Specifications 1–6) and AR 600–50, para. 2–1b., e., and i., and para. 6–2a(2) and (4) (15 Aug. 1982) (Specifications 9, 13, 15–20, 23–25 and 27).

vides that "[a] client has a privilege to ... prevent any ... person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, ...." This includes confidential telephonic communications between client and lawyer. M.R.E. 511(b). *See generally* M.R.E. 502(a). "A client is a person, public officer ..., either public or private, who receives professional legal services from a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." M.R.E. 502(b)(1). "A lawyer is a person authorized, or reasonably believed by the client to be authorized to practice law; ...." M.R.E. 502(b)(2). Finally, a confidential communication is one "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the condition of professional legal services to the client...." M.R.E. 502(b)(4). The facts of this case demonstrate that the discussions between appellant and CPT B were privileged since they establish: (1) appellant reasonably believed he was consulting with a lawyer with a view towards obtaining legal services; and, (2) he communicated confidential information to that lawyer while under that belief.

■ We recognize that, by virtue of his assignment to the Administrative Law Division, CPT B may not have been authorized to give legal assistance to individual service members. Individual legal assistance is normally performed by judge advocates performing duties as legal assistance officers [2] or as defense counsel.[3] On the other hand, administrative law officers principally render staff legal advice to Army officials and agencies in the performance of their official functions. *See generally,* Army Regulation 27–1, Legal Services: Judge Advocate Legal Services, para. 10 (IO1 3 Feb. 1982).[4] Furthermore, although CPT B stated he did not believe he had established an attorney-client relationship with the appellant, the manner in which he dealt with the appellant, researched his question and rendered the advice undermines that belief. However, neither CPT B's belief nor the fact that he may not have been authorized to render individual legal assistance because of the nature of his duties are dispositive. The privilege applies because it is the reasonableness of appellant's belief that governs. *See United States v. Turley,* 24 C.M.R. 72 (C.M.A. 1957); *United States v. McCluskey,* 20 C.M.R. 261 (C.M.A.1955).[5] The record sup-

---

**2.** Army Regulation 608–50, Personal Affairs: Legal Assistance, para. 5b(1) (22 Feb. 1974), superseded by Army Regulation 27–3, Legal Services: Legal Assistance, para. 1–6 (1 March 1984).

**3.** Army Regulation 27–10, Legal Services: Military Justice chap. 6 (1 Sep. 1982).

**4.** Army Regulation 27–1, Legal Services: Judge Advocate Legal Service, para. 2–4(b) (1 Aug 1984) now provides:

[Judge advocate] officers represent individual clients only when detailed or made available to do so, such as when acting as legal assistance officers or defense counsel. They may not, without permission of superiors, represent service members or advise clients so as to enter into attorney-client relationships. Staff or command [judge advocates] will not enter into attorney-client relationships with persons suspected, accused, or convicted of criminal offenses without the approval of the major Army command (MACOM) [staff judge advocate]. Their superiors may give permission to establish attorney-client relationships if necessary for the performance of certain assigned

duties. Otherwise, permission will be on a case-by-case basis.

**5.** An issue not fully litigated at trial is whether appellant's communications to CPT B lost their otherwise privileged status because they "clearly contemplated the future commission of a fraud or crime or if services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." M.R.E. 502(d)(1). The military judge overruled appellant's objection to CPT B's testimony using M.R.E. 502(d)(1) as authority without allowing counsel for either side to present evidence in support of their respective positions. In so doing, he relied exclusively on the contents of CPT B's sworn statement at the Article 32, UCMJ, investigation. Contrary to the judge's findings, we do not agree that the exception contained in M.R.E. 502(d)(1) applies. Moreover, we will not speculate as to what may have been elicited had other evidence on this matter been admitted. We have held it is an abuse of discretion for a trial judge to expedite interlocutory proceedings at the expense of the rights of

ports the conclusion that CPT B was giving personal legal assistance to a soldier who expected their communications to be confidential rather than rendering official legal guidance to a first sergeant who had no such expectation. Accordingly, CPT B's testimony should not have been admitted.

■ "When a confidential communication is improperly used against an accused in a criminal case and the accused is convicted, the conviction can nonetheless be affirmed, if the record demonstrates that the use made of the communication was harmless to the accused and that the conviction is otherwise valid (citations omitted)." *United States v. Brooks*, 2 M.J. 102, 105 (C.M.A.1977). We perceive a two-fold prejudicial effect from the admission of the privileged communications. First, the court members learned that appellant knowingly violated the standards of conduct regulation for at least six and perhaps twelve of the offenses that post-dated the judge advocate's advice. Second, it tended to diminish appellant's credibility since it contradicted his testimony during extenuation and mitigation. We believe sentence reassessment is appropriate. In so doing, we have considered appellant's lengthy period of outstanding service and, in particular, his fine combat record. On the other hand, appellant's operation of the business in the manner reflected in this case is not the kind of behavior expected of a noncommissioned officer of the armed forces of his grade and position.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for reduction to the grade of E-7 and forfeiture of $200.00 pay per month for nine months.

Senior Judge MARDEN and Judge PAULEY concur.

the accused. *United States v. McMillion,* 16 M.J. 658 (A.C.M.R.1983). The judge's failure to allow appellant and the Government to properly

present evidence on this issue was not justified. *See United States v. Salisbury,* 50 C.M.R. 175 (A.C.M.R.1975).