**UNITED STATES, Appellee,**

v.

**Specialist Samuel E. NELSON, Jr., 402–98–8374, United States Army, Appellant.**

**ACMR 9102742.**

U.S. Army Court of Military Review.

28 Dec. 1993.

For Appellant: Major Robin L. Hall, JAGC, Captain Michael Huber, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Donna L. Bar-

lett, JAGC, Captain Richard O.I. Brown, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Senior Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of rape, false swearing, and adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1988) [hereinafter UCMJ].[1] The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1.

■ The appellant asserts that the military judge erred by admitting into evidence an oral statement he made to his civilian defense attorney within the attorney-client privilege. We agree.

## I. Facts

The appellant and a friend, Private First Class (PFC) Sams, attended a party in Killeen, Texas, on 3 May 1991. There they met a woman soldier who they agreed to drive back to the barracks at Fort Hood. On the way to the barracks, the woman, who was very drunk, vomited on herself. The appellant and PFC Sams took her to PFC Sams' off-post apartment to clean her up. What occurred at the apartment led to the rape charge. The appellant's sworn statement regarding his conduct at the apartment was the basis of the false swearing charge.

After the woman filed a complaint with the Killeen, Texas, Police Department accusing the appellant of rape, he was questioned by police officers of that department and later by agents of the Criminal Investigation Command (CID). The woman named PFC Sams as a witness, and PFC Sams was also questioned by the Killeen

police. Concerned about the allegations, both men decided to seek the advice of a local attorney, Mr. H, who had previously represented PFC Sams on a drunk driving charge. They visited Mr. H's office on 14 May. At trial, the appellant described the meeting as follows:

Q. Okay, tell the judge about what you did, basically, when you arrived [at Mr. H's office].

A. Well, sir, we got to Mr. [H's] office. His secretary had us fill out a form and Mr. [H] called us back, reviewed the form, and he said he wouldn't do nothing . . . he wouldn't even talk to us unless he had a retainer fee. So, me and Sams, we talked and I said, "Well, let me go get the checkbook," because my wife, she was out shopping. So, Private Sams, he ran me home and I got the checkbook and we went back and retained Mr. [H].

Q. And you were doing this all together?

A. Yes, sir.

Q. Did he split the money with you?

A. No, sir.

Q. Did you expect him to?

A. No, sir.

Q. Okay, but as far as getting the checkbook and seeing Mr. [H], you did go together?

A. Yes, sir.

Q. Okay, so you basically wanted him to be your attorney, right?

A. Correct, sir.

Q. And you knew that he was an attorney, right?

A. Right, sir.

Q. And any conversations that you had with him . . . how did you feel about the confidentiality of the conversation, if there was any?

A. Well, I felt that it was supposed to be . . . whoever heard it in the room, that's all it was going to be.

---

1. After entry of findings and after determining the adultery charge was multiplicious with the rape charge, the military judge conditionally dismissed the adultery charge "on condition that the rape offense is approved by the Convening and appellate authorities."

Q. Well, PFC Sams was there. Did you expect it to be confidential, even with him being there?

A. Yes, sir, because he had questions legally ... he was asking questions of Mr [H] and, since we both was in there, it was ... I asked Sams and he said, "Well, we're both here and we both need legal advice, so we'll just go with what Mr. [H] has to say."

Q. Did you feel that you had a common interest in being there?

A. Oh, yes, sir.

Q. And, incidentally, with respect to PFC Sams, had he told you that he was a suspect of the Killeen Police Department?

A. Oh, yes, sir, he told me he was being accused of falsifying a statement.

Q. No, I'm talking about the police department in Killeen, not the CID.

A. Oh, Killeen? Yeah, they told him he was a suspect in the case, sir.

Q. What kind of suspect?

A. A witness as to what actually happened.

. . . .

Q. And you were the only one who came back with a retainer fee, right?

A. I was the only one who came back with the money, sir, but I was not the only one seeking legal advice.

During the meeting with Mr. H, the appellant admitted having intercourse with the victim. PFC Sams later reported this damaging admission to the CID, and the trial counsel sought to introduce the admission into evidence at the appellant's trial. The correctness of the military judge's ruling permitting the appellant's statement into evidence is at issue here.

Mr. H represented the appellant at trial. Wisely, the trial counsel moved in limine for a judicial ruling to determine whether PFC Sams would be allowed to testify as to the appellant's admission made during the

interview with Mr. H. Assuming that the communication was not privileged, the trial counsel also moved to have Mr. H disqualified from representing the appellant because of a conflict of interest and because Mr. H was a potential witness to the appellant's admission.[2] The defense team, consisting of Mr. H and a military defense counsel, opposed the motion. Mr. H did not testify on the motion; the military defense counsel questioned PFC Sams and the appellant, who were the only two witnesses on the motion.

Private First Class Sams testified that he accompanied the appellant to Mr. H's office because he, PFC Sams, was worried about his own involvement in the incident after being questioned by the Killeen police and making a written statement to them.[3] PFC Sams testified that "[m]y main concern was to see if I needed advice ... I mean, needed representation. I obviously needed advice." PFC Sams admitted that he did not ask Mr. H to represent him nor did he pay Mr. H a retainer. Both the appellant and PFC Sams testified that they expected their conversations with Mr. H to be confidential.

After hearing the testimony of PFC Sams and the appellant, the military judge entered findings of fact and conclusions of law. The military judge summarized the contentions of the parties and his conclusions as follows:

The government maintains that PFC Sams was a third party, or an interloper, and, thus, the statements were not the result and [sic] afforded the protected status of privileged confidential attorney-client communications and, thus, at least from the position of the government, PFC Sams should be permitted to either testify as to what he had observed or his statement should be accepted into evidence.

The defense, on the other hand, maintains that both PFC Sams and Specialist

2. We need not decide this aspect of the motion because of our disposition of the case.

3. Apparently PFC Sams had cause to seek legal advice of his own. Subsequent to the interview

with Mr. H, PFC Sams was investigated for lying in his sworn statement to the Killeen police regarding the incident.

Nelson were there together; that they had a common interest; and that there was an understanding that everything said was, in fact, confidential; and that Specialist Nelson, as a client of Mr. [H], has the right to invoke the client-attorney [sic] privilege and, thus, prevent PFC Sams from relating what he had heard while he was in the office.

Upon carefully reviewing the briefs, particularly [with reference to] Military Rule of Evidence 502, I find that, certainly, Specialist Nelson was, in fact, a client of Mr. [H] and that Mr. [H], upon accepting Specialist Nelson's retainer fee, was, in fact, his attorney, so that there was an client-attorney relationship between Mr. [H] and Specialist Nelson. On the other hand, PFC Sams did not retain Mr. [H], did not offer any retainer fee, and thus, did not, at that time, have a client-attorney relationship. The fact that he was still ... that is, "he", PFC Sams ... making monthly payments to Mr. [H], due to the earlier DWI hearing, does not, in my opinion, make him a client or Mr. [H] his attorney for this matter.

Upon carefully reviewing [Military Rule of Evidence] 502, I find that, due to the presence of a third party ... that is, PFC Sams ... although Specialist Nelson may well have believed that his statements were protected as a result of his client-attorney relationship, the statements were, in fact, not so protected. PFC Sams was not a representative of either, he was not a client, and, although he did have an interest in the proceedings, he was not a party to the confidential communication. Due to PFC Sams' presence, the conversation was not confidential and I find nothing in Rule 502 which would allow Specialist Nelson to protect this conversation and bar the testimony of PFC Sams. Thus, I hold that PFC Sams will be permitted to testify as to what he has heard or, perhaps, in the

alternative, that his potential testimony or his statement of 1 October is not specifically barred due to the attorney-client privilege. However, that is not to say that the defense may not have other legal bases to suppress the statement or the testimony.

Following this ruling, the appellant entered pleas of not guilty, and as part of the government's case PFC Sams testified that the appellant admitted to Mr. H that he had intercourse with the complainant. The appellant was convicted of rape, adultery, and of falsely swearing that he had not been alone with the complainant in PFC Sams' apartment.

## II. Law

Military Rule of Evidence 502 [hereinafter Mil.R.Evid.] discusses confidential communications and the lawyer-client privilege.[4] Rule 502 provides in pertinent part that:

(a) *General rule of privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between the client or the client's representative and the lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's lawyer to a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or between lawyers representing the client

(b) *Definitions.* As used in this rule:

(1) A "client" is a person ... who receives professional legal services from a lawyer, or who consults a lawyer with a view to obtaining professional legal services from a lawyer.

---

**4.** Much of Mil.R.Evid. 502 is taken from Proposed Federal Rule of Evidence 503 [hereinafter Fed.R.Evid.]. Mil.R.Evid. 502 analysis at page A22–36. While the Supreme Court approved Proposed Fed.R.Evid. 503, Congress rejected it. Stephen A. Saltzburg et al., Federal Rules of Evidence Manual at 587 and 593 (5th ed. 1990).

*See generally id.,* at 403–07. We need not decide the reach of the President's authority under Article 36, UCMJ, to prescribe rules of evidence, as Fed.R.Evid. 501, a general rule of privilege based on the common law, remains in effect in the federal courts. *Compare* UCMJ art. 36(a) *with* Mil.R.Evid. 101(b)

....

(3) A "representative" of a lawyer is a person employed by or assigned to assist a lawyer in providing professional legal services.

(4) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(c) *Who may claim the privilege.* The privilege may be claimed by the client.... The lawyer or the lawyer's representative ... may claim the privilege on behalf of the client....

(d) *Exceptions.* There is no privilege under this rule under the following circumstances:

....

(5) *Joint clients.* As to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients.

■ The attorney-client privilege extends only to confidential communications. Saltzburg, *supra,* at 426. Determination whether a communication is "confidential" requires an examination of the communicating party's intent and the circumstances. Mil.R.Evid. 502(b)(4), analysis at A22–36. Doubts are resolved in favor of the accused. *United States v. Gandy,* 9 U.S.C.M.A. 355, 26 C.M.R. 135, 141 (1958); *United States v. Green,* 5 U.S.C.M.A. 610, 18 C.M.R. 234, 237 (1955). *See generally United States v. Henson,* 20 M.J. 620 (A.C.M.R.1985).

■ As a general rule, disclosures in the presence of third parties destroys the confidentiality of the communication, thus rendering the communication unprotected by the privilege. *United States v. McCluskey,* 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955); *United States v. Landof,* 591 F.2d 36 (9th Cir.1978); Wigmore, Evidence (3rd ed. 1983), §§ 2311, 2326; McCormick on Evidence, vol 1, § 91 (4th ed. 1992). However, the general rule has exceptions. The "incidental communication of information to a co-client while communicating with one's attorney, [is confidential and] does not constitute waiver of the privilege...." *United States v. Moscony,* 927 F.2d 742, 753 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991) (citing Weinstein's *Evidence,* para. 503(b)[06] at 503–100; and, *Testimonial Privileges,* § 1.55 at 92).

■ The attorney-client privilege may attach to confidences shared with an attorney during initial discussions between the parties even though the relationship does not continue. *Levin v. Ripple Twist Mills, Inc.,* 416 F.Supp. 876, 883 (E.D.Pa.1976). If an attorney initially undertakes to represent several accused, communications made by one of them are protected in a prosecution against any of them. Mil.R.Evid. 502(d)(5); *see* Saltzburg, *supra,* at 427. Under Mil.R.Evid. 502(d)(5), "[o]nly when they sue each other does the privilege disappear." *Id. See also* Joseph A. Woodruff, Privileges Under the Military Rules of Evidence, 92 Military Law Review 5, 18 (1981) (opining that the exception to the privilege contained in Mil.R.Evid. 502(d)(5) is wholly inapplicable to courts-martial because a criminal proceeding is never an action "between" any of the clients).

■ The privilege may apply even if the attorney declines to represent one of the parties after an initial joint consultation. In *In re Auclair,* 961 F.2d 65 (5th Cir. 1992), three persons sought the advice and representation of one attorney, who interviewed all three together and individually. The attorney declined to represent two of the three. The attorney was later called to testify as to disclosures made by the one person accepted as a client. The court ruled that confidential communications made with a view toward employing a lawyer are privileged even when employment is not accepted. *Accord, Levin,* 416 F.Supp. at 883. The court in *Auclair* held that when persons with common interests seek the advice of a lawyer and are seeking common representation there is a reason-

able expectation of confidentiality and therefore, communication by the client is privileged.

■ The burden of demonstrating that an attorney-client relationship exists and that information falls within the privilege rests upon the party asserting the privilege. *Weil v. Investment/Indicators, Research & Mgt., Inc.,* 647 F.2d 18 (9th Cir. 1981). Ultimately, application of the attorney-client privilege is a question of fact. *In re Auclair,* 961 F.2d at 68.

## III. Decision

We agree with the military judge's basic findings of fact. However, we disagree with the military judge's conclusions that PFC Sams was not a "client" and that no attorney-client privilege existed in this case.

If we were to apply the general rule that the presence of third parties destroys the confidentiality of the communication, we would find that the presence of PFC Sams, a third party, caused the communication to lack confidentiality. However, one of the exceptions to the general rule involves situations, such as here, when two or more persons consult with one attorney concerning a matter of common interest. The appellant and PFC Sams each sought the advice of Mr. H regarding different aspects of a common legal problem. Each apparently asked questions of Mr. H. and may have received some advice from him.

■ While the military judge's finding of fact that PFC Sams had neither retained Mr. H nor offered any retainer fee may be correct, we specifically reject his conclusion that there was no relationship implicating the attorney-client privilege in this case. Payment of a retainer fee or the agreement of an attorney to represent a person is not the test. PFC Sams was a "client" within the meaning of Mil.R.Evid. 502 without regard to whether a retainer fee was offered or paid, and without regard to whether Mr.

H agreed to represent PFC Sams in the matter discussed. The precedents cited above are consistent with this conclusion.

The evidence of record demonstrates both soldiers intended to seek legal advice and intended that their communications with Mr. H were to be confidential. We find that the appellant's communication was "confidential."

We find that PFC Sams was a "joint client" as described in Mil.R.Evid. 502(d)(5). We further find that the communication was not disclosed in an action between the appellant and PFC Sams; therefore, the exception to the privilege contained in Mil. R.Evid. 502(d)(5) does not apply. Any ambiguities regarding the privilege we resolve in favor of the appellant. We conclude that the appellant has met his burden of showing that the confidential communication was privileged under the facts of this case.

We hold that the appellant's statement made to his attorney in the presence of PFC Sams was confidential and that it was a privileged communication. The statement was therefore inadmissible into evidence against the appellant after he claimed the attorney-client privilege.

■ We further find the military judge's ruling to be prejudicial error requiring corrective action as to the rape charge. The appellant elected not to testify as to either offense of which he was convicted. The defense theory regarding the rape was that the appellant and PFC Sams were merely assisting a very drunk woman who had vomited on herself, and that no sexual activity occurred. Private First Class Sams' improperly admitted testimony about what he overheard in the lawyer's office undermined this theory. On the other hand, the appellant's conviction for lying under oath was not affected by PFC Sams' testimony about what he overheard. We will therefore take corrective action as to the rape charge only.[5]

---

5. In our decretal paragraph, we will also reinstate the charge of adultery which was dismissed at trial after the military judge ruled the charge was multiplicious for findings with the

rape charge. *See generally, United States v. Zupancic,* 18 M.J. 387, 389 (C.M.A.1984); *United States v. Williamson,* 19 M.J. 617 (A.C.M.R. 1984), *pet. denied,* 21 M.J. 24 (C.M.A.1985);

The findings of guilty of the Charge and its Specification (rape) and the sentence are set aside. The finding of guilty of Specification 1 of the Additional Charge (false swearing) is affirmed. Specification 2 of the Additional Charge (adultery), dismissed by the military judge after findings as multiplicious with rape, is hereby reinstated. The record of trial is returned to the Judge Advocate General for submission to the same or a different convening authority who may order a rehearing on the rape and adultery charges and on the sentence. If the convening authority determines that a rehearing on the rape and adultery charges is impracticable, he may dismiss those specifications and order a rehearing on sentence only. If the convening authority determines that a rehearing on sentence is impracticable, he may reassess the sentence on the basis of the affirmed finding of guilty.

Judge JOHNSTON and Judge BAKER concur.

*United States v. Woods,* 21 M.J. 856, 876–77 n. 33 (A.C.M.R.1986), *rev'd on other grounds,* 26 M.J. 372 (C.M.A.1988). We will not reinstate

the finding of guilty to the adultery charge because the adultery charge is affected by the error discussed in this opinion.